81 331
98 542
81 331
111 270
49a 50

JOHNSON, *Appellant,* v. JOHNSON *et al.*

1. **Mortgage, Incident to note given to secure.** A mortgage given to secure a note is regarded as incident thereto, and passes with such note to every holder at the time he receives it, without any transfer or assignment, distinct or separate from the paper the mortgage is given to secure.

2. **Mortgage:** LIMITATION, STATUTE OF. The mortgage ceases to exist as soon as the debt, it is given to secure, is paid, but so long as the debt is kept alive, the mortgage lien remains in full force, and any acknowledgment or promise of the debtor sufficient to prevent the statute of limitations from running against the debt, equally prevents the statutes from running upon the mortgage.

3. **Limitations:** MORTGAGE: REVIVOR OF DEBT. When the bar of the statute of limitations is complete, any act of the mortgageor which revives the debt, also revives the lien of the mortgage, unless the parties agree otherwise, or unless such revivor affects the rights of purchasers and mortgagees acquiring title after the bar is complete, and before the act of revivor.

*Appeal from Lafayette Circuit Court.*—Hon. Wm. T. Wood, Judge.

**Reversed.**

*J. D. Shewalter* for appellant.

A suit may be brought to foreclose a mortgage, although the debt secured thereby is barred by the statute of limitations; after the lapse of ten years there is a presumption of payment only, but this presumption may be repelled by proof of non-payment. *Chouteau v. Burlando,* 20 Mo. 482. A note may be barred by limitation and yet the mortgage securing it may be enforced against the land. *Cape Girardeau v. Harbison,* 58 Mo. 90. There was a recognition of the mortgage within ten years which repels the presumption of payment. *McNair v. Lot,* 34 Mo. 285. The statute of limitations is inapplicable, because the replication set up a new promise in writing which the proof sustained.

*Alexander Graves* for respondent.

Martin, C.—This was a suit to foreclose a mortgage, and was commenced July 14th, 1880. The debt of the mortgage was evidenced by a promissory note, dated February 11th, 1860, signed by Albert G. Johnson, as principal, and David Johnson, as surety, payable one day after date to —— Ridings and Martin, in the sum of $372.98, and bearing interest at the rate of ten per cent per annum. The mortgage was of the same date with the note, which is described therein, and is conditioned that Albert G. Johnson shall pay the note, together with all interest, according to its tenor and effect. This mortgage was executed and delivered to David Johnson, the plaintiff, by Albert G. Johnson, who was his brother, and covered forty acres of land.

It is alleged in the petition that the plaintiff paid off the whole of this note, and that only $442.55 have been repaid by the principal debtor, leaving a balance still due of several hundred dollars. Albert G. Johnson died March 2nd, 1880, and the suit is against his widow and daughter as heirs in respect to the land proceeded against. By death of the widow since appeal, the suit has abated as to her.

The defendants, by separate answers, make general denial of the facts of the petition, and plead the statute of limitations in defense. The plaintiff, by way of replication, alleges that Albert G. Johnson, on the 20th of March, 1871, paid on the debt the sum of $442.55, and within ten years before commencement of suit.

After the evidence relating to the issues had been submitted, the court found in favor of defendants, on the ground, presumably, that the right of action had been barred.

There is no conflict in the testimony about the payment of the note by plaintiff. On the 26th of January, 1863, he paid $200 to one Carrol, who was the holder of the note at that time, which payment was evidenced by an indorsement to that effect on the note, as well as by a separate receipt. Afterward, in February or March, 1863, the plaintiff paid the balance of the note, amounting to about $300, as sworn to by an eye witness. The note was then delivered to plaintiff. It appears from the evidence that in 1871, a partial settlement, or ascertainment of mutual indebtedness took place between the two brothers. David had become indebted to Albert for the price of forty acres of land in a sum which is not precisely stated, while he held against him this note, which was still running on unpaid. It was ascertained at this settlement that after allowing Albert for the land purchased from him, he would remain indebted on the note in the sum of about $400. David desired to have his indebtedness for the land credited on the note, and Albert wanted him to take for the balance due him, the land conveyed by the mortgage. But David was

unwilling to do this, and expressed a desire that Albert should go on and live on it. Albert declined to allow the indebtedness of David to be credited on the note, but requested a separate note from him for the amount, so that each would hold a note against the other in the full amoun of his claim.

This was done by David executing and delivering a note for his indebtedness, and retaining the note in the mortgage as a demand against his brother and the land securing it. No credit on the note was entered, and no written memorandum of the transaction appears in evidence. No further payments, or recognition of the note appear, till long afterward in January, 1880. Albert was then subject to the illness which terminated in his death. David visited him with the view of obtaining a settlement of their mutual demands, taking along with him a Mr. Satterfield, who assisted at the settlement. According to the terms of this settlement, the note of David to Albert was produced by Albert, and it was agreed that it should be credited on the mortgage note, as of March 20th, 1871. The amount was ascertained to be $442.55. Accordingly the following memorandum was indorsed on the note and signed by Albert:

"March 20th, 1871.

Received on the within note $442.55. This credit of March 20th, 1871, includes the above erased credit and all other payments ever made by me on the within note.

ALBERT G. JOHNSON.

Attest: HENRY GOLDKILLER."

This settlement was effected, and the memorandum made in January, 1880. The note held against David was delivered up and destroyed after the credit was entered. The $200 credit appearing upon the note as of January 26th, 1863, was erased because it was a credit to which Albert was not entitled, it having been paid by David to the holder of the note, when he was discharging his obligation as surety. The signature of Albert was witnessed by Mr.

Goldkiller who came in before the settlement terminated. Albert died about three weeks after the settlement. There is nothing in the evidence to impeach the good faith and reasonableness of this settlement. The brothers held opposing demands against each other, which the indulgence, incident to kinship, had permitted to remain unsatisfied for a long time. And, although the debt and mortgage lien may have been barred by the statute of limitations, the moral obligation to repay remained, and there was nothing unreasonable in the movement of the plaintiff to obtain a settlement with his brother, in view of his expected decease.

The single question for us to determine is, whether this settlement and written evidence of it, are sufficient to take the mortgage lien out of the operation of the statute of limitations. If it was, then the action of the court in rendering judgment against the plaintiff will have to be reversed.

The point as to the character of facts sufficient to keep the mortgage lien alive after the obligation is barred, for which the mortgage was given, need not be considered in this case, for the reason that the same limitation of ten years applies to both, and no evidence of acknowledgment bears upon the mortgage except as incidental to the note. The plaintiff as surety of the mortgageor, having paid the note to the legal holder, became subrogated to his rights as the legal owner thereof, and as such he was entitled to the security contained in the mortgage, which had been delivered to him to secure this identical note. *Allen v. Dermott*, 80 Mo. 56.

Under our statute a promissory note is barred in ten years. The running of the statute is suspended and its bar overcome by evidence of a part payment of it, or a written acknowledgment of it within ten years before suit. It has been decided that part payment on a note, after the bar of the statute has become complete, will revive the cause of action upon it. *Shannon v. Austin*, 67 Mo, 485. Of course

a written acknowledgment of the obligation of the note would have the same effect. Under our decisions, a mortgage given to secure a note is regarded as incident to the note, and passes with it to every holder at the time he receives it, without any transfer or assignment, distinct or separate from the paper it is given to secure. It, also, ceases to exist as soon as the debt is paid. *McQuie v Peay*, 58 Mo. 56; *Kansas City S. A. v. Mastin*, 61 Mo. 435; *Christian v. Newberry*, 61 Mo. 446; *Pickett v. Jones*, 63 Mo. 195; *Adair v. Adair*, 78 Mo. 630. From this it follows as a natural consequence that, " so long as a debt which a mortgage is given to secure is kept on foot, the mortgage lien remains in full force. Therefore, any acknowledgment or promise of the debtor sufficient to prevent the statute from running against the debt, equally prevents the statute from running upon the mortgage." Wood on Limitations, 460.

When the bar of the statute is complete, any act of the mortgageor which revives the debt, also revives the lien of the mortgage, unless the parties agree otherwise. *N. Y. Life Ins. and Trust Co. v. Covert*, 29 Barb. 435; *Schmucker v. Sibert*, 18 Kansas 104. Such acts are always binding between the mortgageor and mortgagee. 2 Jones on Mortgages, § 1202 (3 Ed). A well defined limitation of this rule excepts from its effect the rights of purchasers and mortgagees, acquiring title after the bar is complete, and before the acts of revivor. Such is not the case before us. The question arises between the mortgagee and the heirs of the mortgageor, who must take his estate subject to the burdens he left upon it.

Measured by these principles, the lien of the mortgage in suit must be regarded as still in force when the suit was commenced, July 14th, 1880, for two reasons.

1st.   In January, 1880, a credit of $442.55 was entered upon this note in the presence of the mortgageor, and with his consent, which is evidenced by witnesses and by his signature. There was nothing fictitious about this credit. It represented a note of the mortgagee, which was surren-

dered to him by the mortgageor, and which was not barred by the statute of limitations, as it was executed in 1871. *Phillips v. Mahan*, 52 Mo. 197. The fact that this payment in 1880 was entered upon the note as in 1871, when the plaintiff in his settlement of that date wanted it entered, does not affect the conclusion. The actual time of the payment, and the time imputed to it by both parties, were both within ten years before suit.

2nd. The memorandum indorsed on the note in 1880 is in substance, a written admission or declaration by the mortgageor that, within ten years, he had paid $442.55 on the note as a subsisting obligation, and that he had never at any time paid any more upon it. The only inference implied from this declaration is, that the balance of the note remained as valid an obligation against him as the part he admitted to be valid by paying the same. The obvious meaning and import of the declaration, as placed upon the outstanding instrument, was to indicate how much had been paid and how much remained to be paid as a subsisting debt.

The judgment is reversed and the cause remanded with directions to calculate the interest due on the note, treating the credit thereon as of the date affixed to it, and to render decree of foreclosure for the amount found due. All concur.