J. W. BERRYMAN, Trustee, HENRY SCHWANER, JAMES L. DALTON, GEORGE B. WHEELER and WILLIAM FERGUSON, Appellants, v. JAMES L. BECKER and THOMAS D. Mc-COWN, Respondents.

Springfield Court of Appeals, July 28, 1913.

1. MORTGAGES: Release of: Subsequent Mortgages. On the record of a mortgage, the marginal entry referring to deeds of quitclaim or release showed the release from the mortgage of only a portion of the land, and by its date showed that it was

not made until after a subsequent mortgage of the remainder of the property had been made and recorded. *Held*, that the mortgagee under the subsequent mortgage was not entitled to priority on the ground that the entire prior mortgage and all the land covered therein had been released.

2. ———: Recorder's Error: Effect on Parties. A recorder, by making an unauthorized or incorrect notation of release on the record of a mortgage or deed of trust, cannot prejudice the rights of the owner of the note secured thereby.

3. ———: Record Entries Concerning: Duty to Investigate. A person, dealing with mortgaged land, is bound to follow up the information suggested by any marginal entry on the record and examine the contents of a quitclaim deed there referred to and failing to do so he acts at his peril.

4. BILLS AND NOTES: Statute of Limitations: Removal of Bar: Burden of Proof. A note is prima facie barred by the Statute of Limitations after more than ten years from maturity and the burden is on the person seeking to recover on the note to remove such bar by showing facts which will take the note out of the statute.

5. ———: Partial Payments: Proof as to Time Made. There is no presumption that an indorsement of payment on a promissory note was made at the time indicated by its date. To take a note out of the Statute of Limitations it is necessary to adduce other evidence than the mere production of the note with a credit thereon bearing a date which would apparently have that effect.

6. ———: Partial Payments: Remove Bar of Limitations, When. Where there is proof that a credit was indorsed on a note by the holder at a time when it was not barred, this being against his interest, furnishes prima facie evidence that payment was made at that time and no showing being made to the contrary the note will not be barred. But where there is no evidence as to when the credit was indorsed there must be proof that the payment was in fact made.

7. LIMITATIONS OF ACTIONS: Revival by Payment: Not Permitted, When. Even though a debt is barred by the Statute of Limitations, a part payment removes the bar and revives the debt. But such revival and removal will not affect the rights of third parties whose rights attached after the bar was complete and before the removal and revival.

8. BILLS AND NOTES: Statute of Limitations: Rights of Third Parties. Where the rights of a third party have attached, a

note that has been barred by the Statute of Limitations prior thereto cannot be revived as against the rights of such third party.

9. **LIMITATIONS OF ACTIONS: Debt: Acknowledgment of: Revival.** Acknowledgment of a debt in writing is sufficient to take the debt out of the Statute of Limitations.

10. **STATUTES OF LIMITATION: Acknowledging Indebtedness: Revival.** Where the written acknowledgment of an indebtedness to the payee does not specify any particular debt or amount, the question is one of fact whether the debt acknowledged is the one sued for, the burden being on the one asserting that it is not.

11. **———: Acknowledging Indebtedness: Partial Payments: Evidence Reviewed.** Evidence of payments and written acknowledgments of an indebtedness secured by a mortgage and promissory note are examined and reviewed. *Held*, sufficient to save the note and mortgage from the bar of the Statute of Limitations.

12. **———: Removal: Part Payments: Acknowledging Indebtedness.** Where a note and mortgage have been saved from the bar of the Statute of Limitations by payments and acknowledgments of the indebtedness at the time the lien of a subsequent mortgage attached to the land covered thereby, it was competent for the mortgagor to further extend the statutory period by making payments or acknowledgments of the indebtedness in writing without affecting a subsequent mortgage.

13. **———: ———: ———: Credits on Note.** It is the payment itself made on a note and not the entry of credit thereon evidencing such payment, that stops the running of the Statute of Limitation.

14. **———: Mortgages: Notes: Obligations Distinct.** A note and a mortgage securing same are distinct obligations to such an extent that the note may be barred by limitations and the mortgage continue in full force and effect so as to support a foreclosure sale.

Appeal from Butler County Circuit Court.—*Hon. Jesse C. Sheppard*, Judge.

AFFIRMED.

*Phillips, Lentz & Phillips* for appellants.

(1)   On its face the note had been barred by the statute for more than eleven years before suit was commenced. The burden is on the defendants to show such facts as will take the note out of the statute. Wood on Limitation, p. 225-6, sec. 98, and note. Biggs v. Roberts, 85 N. C. 451.   (2)   The indorsements on the back of the note, without proof of the fact of payment and when made, are insufficient to take the case out of the statute. Phillips v. Mahan, 52 Mo. 199; Goddard v. Williamson, 72 Mo. 133; Haver v. Schwyhart, 39 Mo. App. 305; Briscoe v. Huff, 75 Mo. App. 290; Regan v. Williams, 88 Mo. App. 596; Crow v. Crow, 124 Mo. App. 128; Brown v. Carson, 132 Mo. App. 376; Regan v. Williams, 185 Mo. 631; Whitney v. Bigelow, 4 Pick. (Mass.) 110.   (3)   In this State there is no presumption that the indorsement of payment on a promissory note was made at the time it bears date. Smith v. Brinkley, 151 Mo. App. 494, 132 S. W. 302.   (4)   It is not sufficient to take the case out of the statute, that the claim should be proved or acknowledged to have been originally just; the acknowledgment must go to the fact that it is still due and must be shown to relate to the particular debt sought to be revived by it. Clementson v. Williams, 8 Cranch (U. S.), 74; Thompson v. Peter, 12 Wheat. (U. S.) 567; Wood on Limitation, p. 147, note; 25 Cyc. 1330-1335.   (5)   The acknowledgment to be available to take the case out of the statute must be in writing, and the writing must contain a distinct and unequivocal acknowledgment of the debt or contain a promise to pay it. R. S. 1909, sec. 1909; Blackburn v. Jackson, 26 Mo. 310; Carder v. Primm, 60 Mo. App. 427; Munroe v. Harrington, 110 Mo. App. 512; Wells v. Hargrave, 117 Mo. 568; Carr's Adm'r v. Hurlbutt, 41 Mo. 267; Chambers v. Ruby, 47 Mo. 99; Kirkbride v. Gash, 34 Mo. App. 258.   (6)   A mortgage will be presumed to have been satisfied after the lapse of twenty years, nothing appearing to the contrary.

Wilson v. Albert, 89 Mo. 541; Cape Girardeau Co. v. Harbison, 58 Mo. 96; Moreau v. Detchmendy, 18 Mo. 530; Wood on Limitation, sec. 172; Jones on Mortgages, sec. 1157. (7) An entry of release or satisfaction on the record is generally binding and beyond contradiction, as respects the rights of third persons dealing with the land without other notice than the record affords. 27 Cyc. 1418, 1419, and cases cited; Bristow v. Thackston, 187 Mo. 350; Cappelle v. Allen, 38 Mo. 222; Valle v. Iron Mountain Co., 27 Mo. 462.

*Lew R. Thomason* and *S. L. Clark* for respondents.

(1) An entry of satisfaction of a mortgage by a person not authorized to do so is an absolute nullity. Joerdens v. Schrimpf, 77 Mo. 383. (2) A party accepting a release of a mortgage, should first ascertain that the party making the release is the holder of the debt secured. Cummings v. Hurd, 49 Mo. App. 139; Brown v. Koffler, 131 Mo. App. 494. (3) The entry of the recorder fails to comply with the provisions of Secs. 4358 and 4360, R. S. 1899, and is not a full or partial satisfaction of said mortgage. A party is bound to pursue such information as the record discloses, and an examination of the record of the quitclaim deed would have shown, and did show, that but a small part of the lands were released from the lien of the mortgage deed. Chappel v. Allen, 38 Mo. 213; Brown v. Koffler, 133 Mo. App. 494; Lee v. Clark, 89 Mo. 559. (4) An indorsement on a promissory note is presumed to have been made at the time the indorsement bears date. Carter v. Carter, 44 Mo. 195; Smith v. Berry, 69 Mo. 142; Smith v. Zimmerman, 51 Mo. App. 519; McElvain v. Garrett, 84 Mo. App. 300. (5) A part payment of a debt, even though made after the bar of the Statute of Limitations has attached, has the effect of removing the bar of the Statute of Limitations and reviving the cause. Shannon v. Austin, 67 Mo.

485; Beck v. Hass, 111 Mo. 264; Humphreys v. Milling Co., 98 Mo. 542; Bender v. Markle, 37 Mo. App. 235. (6) A credit made by the holder of commercial paper at a time when the note is not barred, and when it was against his interest to have made the credit, is prima facie evidence of the payment, and the burden is upon the opposite party to show that no payment was made. Craig v. Callaway Co., 12 Mo. 95; County of Vernon v. Stewart, 64 Mo. 410; Clinton Co. v. Smith, 238 Mo. 118. (7) Where a party, to remove the bar of the Statute of Limitations, proves a general acknowledgment of the indebtedness in writing, the burden of proof is upon the opposite party to show that it related to a different indebtedness to the one in controversy. Boyds, Admrs., v. Hurlburt, 41 Mo. 264; Mastin v. Branham, 86 Mo. 643.

STURGIS, J.—This is a suit for injunction whereby the plaintiffs as beneficiaries in a deed of trust on 360 acres of land in Butler county, Missouri, seek to restrain the defendants, having a like interest in a prior mortgage with power of sale on the same land and 120 acres in addition in the same tract, from foreclosing said prior mortgage, as said defendants were proceeding to do when this suit was filed. The court granted a temporary injunction but on final hearing dissolved the same and dismissed plaintiff's bill.

The plaintiffs claim that defendants should not be allowed to sell the land in question under the prior mortgage for the reason that the debt secured thereby has been long since paid and the mortgage released; and further that said debt and mortgage are barred by the Statute of Limitations. The mortgage in question which defendants were proceeding to foreclose was given by Aaron Mast, then owner of this land and the common source of title, to James L. Becker, to secure to him a note for $1000, due one year after date. The mortgage bears date March 25, 1889, and was

recorded shortly thereafter in Book 27, page 147. This suit was commenced October 4, 1911, and the foreclosure of the mortgage had been commenced a few days earlier, so that at this time the note was more than twenty-one years past due. The record of this mortgage when offered in evidence contained on the margin these entries. "This deed of trust released by a quitclaim deed of release recorded in Book 49, at page 290." Also the following: "The within mortgage is released by quitclaim deed recorded in Book 49, at page 627, this 3rd day of April, 1902. Ed. L. Abington, Recorder, by Rose B. Kennedy, D. R." The deed of trust on which plaintiffs as beneficiaries therein claim the right to enjoin a sale under said prior mortgage was executed by the said Aaron Mast to secure a note for $1700, both note and mortgage bearing date of February 21, 1900, and recorded about the same date. The first quitclaim deed referred to in the marginal entry on the record of the mortgage in question as being recorded in Book 49, page 290, and which plaintiffs claim is a full release of the same, is dated March 14, 1899, and conveys only forty acres of land, which forty acres is covered by the said prior mortgage to Becker but not by the deed of trust to plaintiffs. The other quitclaim deed referred to in said marginal entry as recorded in Book 49, page 627, is dated March 26, 1900 (a later date than plaintiffs' deed of trust), and it also conveys only forty acres and this forty acres is also covered by said prior mortgage but not by plaintiffs' deed of trust. Each of these quitclaim deeds contain substantially this recital: "This deed of quitclaim being made in release of and satisfaction for a certain deed of trust dated the fifteenth day of March, 1889, recorded in the deed records of Butler county aforesaid, in Book 27, at page 147."

It will be noted that the marginal entry on the record of the mortgage in question referring to these deeds of quitclaim or release is dated April 3, 1902, so

that it thus appears that these marginal entries were not on the margin of the record of this mortgage until some time after such quitclaim deeds of release were filed and some two years after the plaintiffs had taken and recorded their deed of trust. In view of these facts there can be no basis for the claim made by plaintiffs that the entire mortgage and all the land covered therein had been released by either or both these quitclaim deeds or that plaintiffs relied on the marginal entry alone or in connection with the quitclaim deeds referred to as showing any such release. That the recorder failed to do his duty in respect to making a proper marginal notation on the record as to these quitclaim release deeds is evident in view of sections 2844 and 2847, Revised Statutes 1909, providing for a *cancellation of the note* in case of full release and the presentation of the same to the recorder in case of a partial release and a notation of these facts upon the record. The effect of this incomplete marginal entry on the mortgage in question would probably be to destroy even the prima facie evidence of a release accorded to a release conforming to the statutory requirements. [Brown v. Koffler, 133 Mo. App. 494, 113 S. W. 711; Lee v. Clark, 89 Mo. 553.] These authorities also show that the recorder by the mere making of an unauthorized or incorrect notation of release on the record of a mortgage or deed of trust cannot prejudice the rights of the owner of the note secured thereby.

That Becker, the mortgagor of the land, did not intend a full release of this mortgage by the first quitclaim deed noted on the margin is shown, not only from the fact that this quitclaim by its terms released only forty acres, but also by the fact that a second quitclaim was later made to release another forty-acre tract of the same land. That any person dealing with this land was bound to follow up the information suggested by the marginal entry and look at the contents of the

173 Mo. App. 23

quitclaim deed there referred to is too well established to need a citation of authorities. [Agan v. Shannon, 103 Mo. 661, 15 S. W. 757; Waldermeyer v. Loebig, 222 Mo. 540, 552, 121 S. W. 75.] It is also significant in this respect that the mortgagor's deed of trust to plaintiffs did not cover the two forty-acre tracts so released.

The next question presented is whether or not the note and consequently the mortgage securing it was barred by the Statute of Limitations at the time defendants were proceeding to foreclose it. The original note secured by this mortgage was put in evidence at the trial and also by consent of the parties exhibited to this court for inspection at the argument. The note on its face was prima facie barred by the ten year Statute of Limitations and the burden was on the defendants to overcome this by showing facts which will take the note out of the statute. [Wood on Limitation, sec. 98, p. 225.] The note as produced with the credits on the back thereof is as follows: "Poplar Bluff, Mo., Feb. 9, 1889. Twelve months after date I promise to pay to the order of James L. Becker, one thousand dollars, with interest at six per cent from date, payable at Lansdale, Pennsylvania. (Signed) Aaron Mast." The following indorsements appear on the back of this note: "Aug. 1889, Recd. $30 Int. for 6 mos; Feb. 1, 1890, Recd. $30 Int for 6 mos; Aug. 13, 1890, Recd. $30 Int for 6 mos; Feb. '91, Recd. $30 Int. for 6 mos; Aug. '91, Recd. $30 Int. for 6 mos; Feb. 12, '92, Recd. $30 Int. for 6 mos; Aug. '92, Recd. $30 Int. for 6 mos; Feb. 27, '93, Recd. $30 Int. for 6 mos; Aug. 24, '93, Recd. $30 Int. for 6 mos; Mar. 15, '94, Recd. $30 Int. for 6 mos; May 29, '95, Recd. $90 Int. to Aug. 9, '95; May 15, '99, Recd. $45; Jan. 1900, Recd. $75; Nov. 14, 1901, Recd. $172.38; Mar. 26, 1902, Recd. $200."

We think it is now the settled law in this State that there is no presumption that an indorsement of payment on a promissory note was made at the time it

bears date. In order to take a note out of the Statute of Limitations it is necessary to adduce other evidence than the mere production of the note with a credit thereon bearing a date which would apparently have that effect. The contrary was ruled in Carter v. Carter, 44 Mo. 195, and in Smith v. Ferry, 69 Mo. 142, where the court said: "The general rule is that an indorsement of payment on a promissory note is presumed to have been made at the time the indorsement bears date." These cases, however, have not been followed (Smith v. Brinkley, 151 Mo. App. 494, 132 S. W. 301), and the law is that it is necessary in order to remove the bar of the statute to show, either by proof that the credit was actually made by the owner of the note or by his direction at a time when the note was not barred or by more direct evidence, that the payment was actually made by the maker at such time. If it be shown that the credit was indorsed on the note by the holder at a time when it was not barred, and consequently was against his interest to have made it, this furnishes prima facie evidence that payment was made at that time and in the absence of a showing to the contrary the note will not be barred. But there must be in such cases proof that the credit was in fact made at such time. [Goddard v. Williamson, 72 Mo. 131, 133; Briscoe v. Huff, 75 Mo. App. 288, 290; Haver v. Schwyhart, 39 Mo. App. 303; Crow v. Crow, 124 Mo. App. 120, 100 S. W. 1123; Regan v. Williams, 185 Mo. 620, 631, 84 S. W. 959.] The cases of Smith v. Zimmerman, 51 Mo. App. 519, and McElvain v. Garrett, 84 Mo. App. 300, are in full accord with these views and the cases above cited. In the case last cited the court approved this declaration of law: "If the jury believe from the evidence, that the intestate, less than ten years after the date of said note, and less than ten years before the commencement of this action, caused to be indorsed thereon a credit, then the presumption is that an actual payment was made at that

time." This instruction met with approval of the Court of Appeals. In the case of Smith v. Zimmerman, supra, at the instance of the plaintiff, the court gave the following instruction: "The court declares the law of this case to be, that even though the note on its face is barred by the Statute of Limitations, yet the evidence shows that a credit indorsement was made on said note by the payee at a time less than ten years after the execution of said note and less than ten years before the bringing of this suit; the credit indorsement having been made at a time when it was against the interest of the payee to make it, the presumption is that actual payment was made at that time, and this is sufficient evidence to take the note out of the operation of the Statute of Limitations." Commenting upon this declaration of law, the Court of Appeals said it was unexceptionally correct.

It is also the law that a part payment of a debt, even though made after the bar of the statute has attached, has the effect of removing the bar of the statute and reviving the debt. [Shannon v. Austin, 67 Mo. 485; Bender v. Markle, 37 Mo. App. 234; Johnson v. Johnson, 81 Mo. 331, 335.] This last case properly adds that "Of course a written acknowledgment would have the same effect." The above rule of law has, however, this important limitation: that it does not affect the rights of third parties attaching after the bar is complete and before the act of revivor. If the mortgagor, as here, parts with his title, or a valid lien attaches to the land, and the note becomes barred, neither part payment nor an acknowledgment in writing thereafter will revive the mortgage or lien against the land. As said in Johnson v. Johnson, supra, "When the bar of the statute is complete, any act of the mortgagor which revives the debt, also revives the lien of the mortgage, unless the parties agree otherwise. [N. Y. Life Ins. and Trust Co. v. Covert, 29 Barb. 435; Schmucker v. Sibert, 18 Kansas, 104.]

Such acts are always binding between the mortgagor
and mortgagee.   [2 Jones on Mortgages, (3 Ed.) 1202.]
A well-defined limitation of this rule excepts from its
effect the rights of purchasers and mortgagees, acquir-
ing title after the bar is complete, and before the acts
of revivor." To the same effect is Zoll v. Carnahan,
83 Mo. 35, 44, which cites and approves Lord v. Mor-
ris, 18 Cal. 482, and Schmucker v. Sibert, 18 Kan. 104.
That such is the law generally see Clark v. Grant,
109 Pac. (Okla.) 234, 28 L. R. A. (N. S.) 519, and
Kaiser v. Idleman, 108 Pac. (Oregon) 193, 28 L. R. A.
(N. S.) 169, and the editorial note where most of the
cases are collected.   The Oklahoma case, above cited,
holds that although a note and morgtage are barred
by the statute, yet the mortgagor may by payment
or acknowledgment in writing revive the lien on the
mortgage as against a third person whose lien attached
*subsequent* to the act of revivor.   The Oregon case,
above cited, holds that although the mortgagor has
parted with his interest in the land or a valid lien has
attached thereto, he may arrest the running of the
statute by a payment made *before* the debt is com-
pletely barred.   The cases all seem to hold, however,
that where the right of a third party attaches between
these dates, the mortgagor is powerless to take the
note out of the bar of the statute as against the right
of such third party.   [See also Wood on Limitation,
sections 229, 230; 25 Cyc. 1387.]

It is also familiar law that an acknowledgment of
the debt in writing is sufficient to take the debt out of
the statute and to do this there need not be an expres-
sion of willingness to pay it or any promise so to do.
It is sufficient that the debtor acknowledges that he
owes it and that it remains unpaid—a subsisting obli-
gation.   [Elliott v. Leake, 5 Mo. 208; Chidsey v. Pow-
ell, 91 Mo. 622, 4 S. W. 446.]   And where the acknowl-
edgment is of indebtedness to the payee without speci-
fying any particular debt or amount, the question

becomes one of fact whether the debt acknowledged is the one sued for with the burden of proof on the one asserting that it is not. [Mastin v. Branham, 86 Mo. 643, 648; Carr's Adm's v. Hurlbut, 41 Mo. 264, 268.] Under these conditions and limitations the revival of a note already barred or the extension of the limitation period of a note by payment thereon or a written acknowledgment of the indebtedness revives the mortgage securing the same. [Johnson v. Johnson, 81 Mo. 336.]

As before noted, the plaintiffs' lien on the land in question attached on March 25, 1900. At that time the note secured by defendants' prior mortgage was more than ten years past due and, in the absence of any payments thereon or acknowledgment of the debt in writing, such note was then fully barred by limitation and could not thereafter be revived to the prejudice of plaintiffs' rights by either payment or written acknowledgment of the debt. Was there sufficient evidence in this case to warrant the trial court in finding, as it evidently did, that the note in question was saved from the bar of the statute by payment thereon and by written acknowledgment of the existing debt prior to the note being fully barred? We think there was. Leaving out of consideration the payments indorsed thereon, apparently for current interest, up to and including 1895, we find the next payment indorsed thereon is "May 15, 1899, $45." At that time the note was not barred. Granting that there is no proof of when or by whom this credit was actually entered on the note, yet, with reference to this payment, the evidence shows that the mortgagor, Aaron Mast, wrote the following letters:

"Poplar Bluff, Mo., March 11, 1899.
"Rev. J. L. Becker, Landsdale, Pa.
"Dear Bro. in Law,

"We are in receipt of your letter of recent date. Glad that you enjoy good health. . . . .You men-

tioned that you only *hold my note for your money* without further security, you hold a deed of trust, at any rate I made you one and it stands recorded in the recorder's office here in *Book 27, at page 147, in your favor*. I surely did send it to you at the time. I have a chance to sell a lot of the land on which your security stands, and I have partly bargained with the man subject to your approval. It is this, I sell him for $125, for 60 acres and he to pay me $45 in cash (which he has already deposited in the bank awaiting your approval) and the balance in two notes of $40 each payable in one and two years, secured by a *first mortgage in your favor* and bearing interest at the rate of eight per cent per annum. Now to do this you will give him a quitclaim deed and I give him a warranty deed, then take his first mortgage back and assign it over to you. I will take the liberty to send a quitclaim deed which complies with our law for you to acknowledge and when returned I will send you the $45 and the mortgage duly recorded, so this man can have a good title and you *are more amply secured*, and a new improvement will be made. The name of the man is Joseph Horste, an early reply will greatly oblige.

"Yours truly,
"(Signed)  A.  Mast."

"Poplar Bluff, Mo., May 5, 1899.

"Rev. J. L. Becker,
      "Landsdale, Pa.,
"Dear Sir: Enclosed find exchange for $45 which you may *credit on my note*. The man who purchased the land is a fairly good man, but he takes his own time to do anything, he just delivered the deed of trust to me to-day. As soon as it is recorded I will sign it over to you, and send it to you for keeping for *collateral* on my account, and if I should not be able to pay you before it is due it will be a *credit on my note also*. So

while you released the land with that quitclaim deed, you will be secured back on the same land again.   I am trying to sell all the land you· claim and *by that means pay you.*   My law suits which I was compelled to bring against former administrators bond will come up in court the third week in this month. · I am trying to save myself in the matter.   All well and hope you are the same.

" (Signed) A. Mast."

There is no question as to the genuineness of these letters, and that they were written by the mortgagor and received by the mortgagee at or about the time they bear date.   At that time the note was not barred nor had any rights of plaintiffs attached to the land.   We think these letters beyond question are sufficient evidence to show that the credit of forty-five dollars was paid at or about the date of the credit, and also such letters contain a clear and unmistakable acknowledgment of a then existing and unpaid indebtedness and identified the indebtedness as being the note secured by the mortgage (deed of trust it is there called) "recorded in the recorder's office here in Book 27, page 147, in your favor;" and this is the mortgage now in question.   This without more would toll the statute and extend the limitation period for ten years after that date.

It is true that plaintiffs contend that in the letter of March 11th, (supra) the word "note" is in the plural, "notes," and on this proposition we have inspected the original letter and, while it possibly could be read either way, we think from an inspection and the context and the fact that it refers to the mortgage in Book 27, page 147, where only one note to the mortgagor is secured, it should be read as "note."   This becomes more evident when read in connection with the letter of March 5th, (supra), on the same subject, where the singular "note" is used.

There is almost equally cogent evidence in a similar letter of the mortgagor to the mortgagee as to the payment of the seventy-five dollar credit of January, 1900. It is evident from the correspondence that a small tract of land covered by defendants' mortgage was sold by the mortgagor to one Horste, as mentioned in these letters, for part cash and part notes, secured on the land sold, and that these notes were pledged as collateral on the note and mortgage in question. The first quitclaim deed noted on the margin as a release deed is also a quitclaim deed to Horste and was evidently made for this purpose. A letter from the mortgagor to the mortgagee, dated Jan. 19, 1900, says: "Enclosed find exchange for seventy dollars, and deeds and notes of Joseph Horste and I. N. Bearden, which I have all signed so they are negotiable. On April the 1st, one is due which if sent to me or the bank for collection. However if the bank collect they make charges. I will collect it and charge you nothing. Mr. Horste seems to get along very well. Think he will be able to meet his note when due. The $70 draft I have taken out of the bank nearly a month ago, and intended to send it as soon as the deed is recorded, and it took the recorder until now to reach it. He is also court clerk and says that he could not do the work any sooner. However when a deed is filed it is as good as recorded, only the papers are limited to the office until recorded and compared. I so far did not make another sale. I had several applicants but could not effect a trade. I have put the price up from now in order to make them know that land is going up. In fact all the land around has made an increase in price as well as lumber or anything else. Many thanks for the *five dollars donated to our church*, we did not need any of it for the clock, as it was made up otherwise, but it will come in fine towards the electric lights." This $70 forwarded by draft and the $5 donated to the

local church make the credit of $75 indorsed on the note.

These payments, however, were made more than ten years prior to the commencement of the foreclosure proceedings sought to be enjoined. They toll the statute and extend the limitation period but not so as to include the date of such foreclosures. It is necessary, therefore, to prove a like payment or acknowledgment of the indebtedness within such ten year period. The note by reason of the payments and acknowledgments of indebtedness just discussed had not become totally barred at the time the plaintiffs' lien attached to the land, and it was therefore competent for the mortgagor to further extend the statutory period by making payments or acknowledging the indebtedness in writing. The next credit of $172.38, of November 14, 1901, if sufficiently proved accomplishes this result. In reference to this payment the mortgagor wrote this letter:

"Poplar Bluff, Mo., Oct. 14, 1901.

"Jas. L. Becker, Landsdale, Pa.

"Dear Bro. in Law,

"Please forward to the Butler County Bank, of Poplar Bluff, Mo., the mortgage deed or deed of trust which is given by I. N. Bearden and wife, to secure one hundred and fifty dollars, dated Dec. 23, 1899, which is in three notes of fifty dollars each, of which I have one deposited in bank now. Mr. Bearden has deposited one hundred and seventy-two and 88-100, to pay for your three notes and interest to this day. Which upon the receipt of the deed of trust will be cancelled from the record and the money forwarded to you by the bank. The bank is instructed to present this deed of trust and have it released for which the fees are figured in with the interest. All well and hope you are the same.

"Yours truly,

"(Signed) A. Mast."

The amount of credit is just fifty cents less than the amount deposited in the bank to be forwarded by it to the mortgagee and that difference is evidently the fees figured in for the release there mentioned.

With reference to the last credit of $200 of March 26, 1902, the following letter, dated at Poplar Bluff, Missouri, Feb. 9, 1902, to Jas. L. Becker, Landsdale, Pa., was in evidence. "Dear Bro. in Law:. Please send Horste notes and deed of trust as he claims to have engaged from some other party the money with which to liquidate these old papers. You can send them either to me or to the Butler County Bank. As soon as collected I will forward to you the proceeds to *apply on my note*. He seems to be in a hurry. Therefore ask you to send them at once." These letters are not all copied in full, the facts omitted relating to family and local affairs not material to this controversy but potent in showing that the same were written at or near the times they purport to be dated. The mortgagor's wife, Sarah Mast, sister of the mortgagee, testified as to this last payment being made by her husband and her evidence, if credited, makes it clear that her husband did in fact send this money to the mortgagee, her brother, to be applied on this note at or about the time mentioned, and that he acknowledged receipt of the same.

In this state of facts the trial court could hardly do otherwise than hold as it did that the note was saved from the bar of the statute by payments and acknowledgments in writing of the indebtedness, notwithstanding two local experts on handwriting testified that in their opinion from the appearance of the note and credits thereon that all such credits were made at one time, by the same person, with the same pen and ink and at a comparatively recent date. It is, however, the payments themselves and not the entries of credit on the note evidencing such payments that stops the running of the statute. Doubtless the trial court was

in a better position than we are to weigh all the evidence and we are satisfied with his conclusions.

Our attention is called to the fact that this note and mortgage were given prior to the enactment in 1891 of section 1892, Revised Statute 1909, and are not affected thereby. [Martin v. Teasdale, 212 Mo. 611, 111 S. W. 511; Morrison v. Roehl, 215 Mo. 545, 114 S. W. 981; Hower v. Erwin, 221 Mo. 93, 119 S. W. 951.] Unaffected by that statute, the note and mortgage securing the same are so far distinct obligations that the note may be barred by limitations and the mortgage continue in full force and effect so as to support a foreclosure sale. [Morrison v. Roehl, supra; Lewis v. Schwenn, 93 Mo. 26, 32, 2 S. W. 391; Booker v. Armstrong, 93 Mo. 49, 58, 4 S. W. 727; Chouteau v. Burlando, 20 Mo. 483.] In all these cases it is held that the mortgage is not barred for at least twenty years and, therefore, any one of the payments or acknowledgments of indebtedness above discussed, if held valid for that purpose, would have the effect of prolonging the life of the mortgage to the time of this foreclosure. In our view of the case it will not be necessary to decide whether the mortgage in question would run indefinitely and beyond twenty years and so be not barred regardless of any payments or acknowledgments of the indebtedness, because of this being wild and unoccupied land, and in the absence of a showing of adverse possession between the mortgagor and mortgagee, as seems to be held in the three cases last cited. The judgment will therefore be affirmed. All concur.