BREESE, RESPONDENT, v. O'BRIEN ET AL., APPELLANTS.

(No. 7,545.)

(Submitted June 16, 1936. Decided July 3, 1936.)

[59 Pac. (2d) 65.]

548

*Messrs. Molumby, Busha & Greenan* and *Mr. John W. Coburn,* for Appellant, submitted a brief; *Mr. Molumby* and *Mr. Coburn* argued the cause orally.

550

*Mr. S. J. Rigney,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an action to foreclose a real estate mortgage. May 13, 1919, William O'Brien and Gertrude O'Brien, his wife, for the purpose of consummating a five-year loan, executed and delivered to Barnes Brothers, a corporation of Minneapolis, Minnesota, a note for $2,000, secured by a first mortgage on certain lands described in the complaint and located in Glacier county, Montana. "Commission mortgage" notes aggregating $240, representing the commission on the loan, were executed by the O'Briens and delivered to Barnes Brothers at the same time, secured by a second mortgage on the same lands covered by the first mortgage. Both mortgages were duly recorded in Glacier county. On June 7, 1919, Barnes Brothers assigned the first mortgage to T. E. Jones, a resident of Wisconsin, and the assignment was also recorded in Glacier county. T. E. Jones subsequently died and the executor of his estate, Calvin J. Jones, on March 24, 1932, sold and transferred the first mortgage and notes to the plaintiff.

In addition to the foregoing facts the complaint alleges that no payments have been made on the obligation in suit since May 1, 1920. None of these facts are in issue. Copies of the mortgage and assignments above were made a part of the complaint. Judgment was prayed for in the amount of the note with accrued interest, for attorneys' fees and costs, and that the land be sold in the usual way, and if the proceeds of such sale were not sufficient to pay the note, attorneys' fees and costs, that a deficiency judgment be allowed.

Judgment was taken by default against all defendants except William and Gertrude O'Brien, who on June 7, 1934, demurred to the complaint, but the record does not show that any action was taken thereon by the court. August 13 the answer of the O'Briens was filed, admitting the execution and delivery of the notes and mortgage, but setting up the affirmative defense authorized by section 9029, Revised Codes—the statute of limitations—and failure of the plaintiff to renew the mortgage as provided by section 8267, Id. All other matter alleged is not pertinent to the issues raised. Defendants prayed that the court "decree the note and mortgage to. be of no force and effect," and that defendants be allowed their costs.

Plaintiff demurred to the answer, but again the record does not show that any action was taken on such demurrer. Plaintiff filed an amended reply, setting out facts relative to certain letters that had passed between the defendants and plaintiff's agent, and on which plaintiff bases his contention that such letters tolled the statute of limitations, and further alleges the filing of an affidavit of renewal of the mortgage, as provided by section 8267, and a copy of such affidavit is made an exhibit to the amended reply and appears to have been acknowledged by the plaintiff on June 28, 1933, before a notary public residing in Waukeshaw county, Wisconsin, but nothing appears in the record to show that such affidavit was filed in Glacier county; in any event, it was filed too late to keep the mortgage alive unless the running of the statute of limitations was tolled by some act or promise of the defendants. However, as between the mortgagors and mortgagee and those acquiring title through the mortgagee, the filing of the affidavit was not necessary so long as the obligation secured by the mortgage was alive. (*Leffek* v. *Luedeman,* 95 Mont. 457, 27 Pac. (2d) 511, 513, 91 A. L. R. 286.)

The action was heard on June 12, 1935; oral and documentary evidence was presented by the parties, the matter was taken under advisement, and on October 2, 1935, the court made and caused to be entered its decree in favor of the plaintiff and directed the lands to be sold to satisfy the judgment.

The court in its findings of facts states that "all the material allegations of the complaint are true and are amply sustained by the testimony free from any legal objections as to competency, admissibility or sufficiency." This appeal is from the judgment.

The defendants assign six specifications of error, but the merits of the defense rest solely on the construction and effect to be given a letter received in evidence as Plaintiff's Exhibit 16. Counsel for the defendants contend that the letter just mentioned is insufficient to toll the statute (1) because the letter contains no direct acknowledgment of the debt nor any explicit promise to pay as required by statute; (2) that plaintiff was not, as is shown by the assignment to him, the owner of the note and mortgage on March 25, 1927, the date of the letter; (3) that the letter was addressed to E. L. Johnson, a stranger in law, being neither the owner nor the agent of the owner; and (4) that William O'Brien did not sign the letter, did not authorize Gertrude O'Brien to write or sign the letter for him, did not know she wrote it, and did not subsequently ratify her action. These contentions will be considered in the order mentioned.

(1) Correspondence between E. L. Johnson and the O'Briens was admitted in evidence over the objections of counsel for the defendants, as follows:

Plaintiff's Exhibit No. 17.

"March 22nd, 1927.

"Mr. Wm. O. O'Brien, Cut Bank, Montana.

"Dear Sir: I have for collection a mortgage signed by yourself and wife covering your Glacier county property. Are you interested in this land. Please let me know by return mail. "Very truly yours."

Exhibit No. 16.

"Cut Bank, Mont., March 25, 1927.

"Mr. E. L. Johnson, Minneapolis, Minn.

"Dear Sir: Your letter received in regard to Re Number 20640, and will say we are very much interested in this land,

as we have been keeping up the taxes and trying to get a crop. But the crops have failed it froze last year and we dident even get our taxes back. We have quite an acreage to put in this year and hope we may be able to get a fair crop. We have had a hard winter, looks as if we would have a late spring. If there isent any crop this year it seems as though we might as well stop trying to farm and turn the land over.

"We have the balance of the taxes to pay in May, so let us know if it will be alright to go a head and put in the crop, and finish paying the taxes. We have been paying for irrigation for the last three years but havent got any yet.

"We havent had a crop since 1916. That brought us enough to live on.

"Now I hope we can try this year yet as we would like very much to keep this land 'as part of it is our homestead' even if it isent worth much. Its realy worth the price of it to live here and try to farm as this is a very windy country, and one has to eat more than their share of dirt.

"We are koping that this land will increase in value so we will be able to pay out as it is pretty hard to live in a place like this so many years and leave with nothing, but if they think they can not wait any longer for their money let us know at once. So we won't have any more expense.

"Let us know just how much we owe and the terms. Awaiting your reply,

"Yours resp.
"MR. and MRS. WM. O'BRIEN."

Plaintiff's Exhibit No. 21.

"April 29, 1927.

"Mr. Wm. P. O'Brien, Cut Bank, Montana.

"Dear Sir: I have been delayed in answering your letter as I have been trying to get in touch with the first mortgage holder. The mortgage I have for collection is the second or commission mortgage you gave to Barnes Brothers at the time your loan was negotiated.

"There is $240.00 plus accrued interest still due on this mortgage and I will be pleased to grant an extension on this payment until fall.

"The first mortgage is not handled by me, but from a letter received from them they seem satisfied to give you a chance to work out this mortgage also.

"I trust that I will hear from you again and that you will be able to get good results from this years crop.

"E. L. J.                     Very truly yours."

Does Plaintiff's Exhibit No. 16 contain either an acknowledgment of the debt or a promise to pay the same? It will be noted that Johnson's first letter to O'Brien (Exhibit 17), simply refers to the mortgage of the defendants on Glacier county property. The O'Brien answer (Exhibit 16) gives the correct number of the $2,000 loan which was also the number of the commission mortgage loan, but obviously Mrs. O'Brien was familiar with the loan number, and as the number was not mentioned in the Johnson letter, it would appear that Mrs. O'Brien had other data relating to the loan when she wrote Exhibit 16, indicating that she must have had the custody of the papers relating to the loan, and we think this is sufficient to establish the fact that Gertrude O'Brien believed the Johnson letter referred to the $2,000 loan. In the last part of the first paragraph the letter states, "If there isent any crop this year it seems as though we might as well stop trying to farm and turn the land over." Turn the land over to whom and for what? The only conclusion logically arrived at, when this is read in connection with the Johnson letter, is that the O'Briens would turn the land over to the holder of the mortgage and for the purpose of discharging that obligation. The next paragraph further confirms such conclusion. The fourth paragraph is just such an expression as a debtor would address to his creditor under similar circumstances. The two last paragraphs clearly expressed acknowledgment of the obligation, and further shows that Mrs. O'Brien knew that Johnson did not own the obligation but was acting for

someone else, and then desired to know how much they owe and the terms.

The statute provides that, "No acknowledgment or promise is sufficient evidence of a new or continuing contract, by which to take the case out of the operation of sections 9011 to 9066 of this code, unless the same is contained in some writing, signed by the party to be charged thereby." (Sec. 9062.) Plaintiff does not contend that William O'Brien signed the letter, but that Gertrude O'Brien did, thereby binding herself and her husband. The evidence clearly supports the contention that Gertrude O'Brien signed the letter, but it is not clear that she was duly authorized thereto by her husband. The signing by the party to be charged may be done by a duly authorized agent. (Sec. 7935, Rev. Codes.) It is not necessary that the party actually attach his signature himself. (*Deep River National Bank's Appeal,* 73 Conn. 341, 47 Atl. 675.)

The sufficiency of a writing to toll the statute is a much-disputed question. We think the better reasoning supports the rule indicated by the following decisions:

In *Leffek* v. *Luedeman,* supra, debtors' letters as follows were held sufficient: "I have your letter of the 24th ult. in which you say that you are going to send notes here for collection. As stated in former letter, I am negotiating for the money to make settlement as promised, but there has been delays that I could not avoid. I am going to pay you as I said that I would, and to send the notes here will only ball things up as I cannot pay them and they cannot be collected. While the Corwin people hold first mortgage and are wanting their money, you will be the first to receive settlement." Later the debtor wrote: "I have your letter of recent date and will say that I am putting what I can get hold of in building and loan and with a loan that I am promised from an intimate friend, I expect to be in a position to make a settlement with you in the early summer." This was held to be a sufficient bar to the statute under the rule laid down in *Galvin* v. *O'Gorman,* 40 Mont. 391, 106 Pac. 887.

"The writing, in order to constitute an acknowledgment, must recognize an existing debt, and that it should contain nothing inconsistent with an intention on the part of the debtor to pay it." (*Manchester* v. *Braedner*, 107 N. Y. 346, 14 N. E. 405, 406, 1 Am. St. Rep. 829.) It is not necessary that there shall be both an acknowledgment and a promise to pay. (*Senninger* v. *Rowley*, 138 Iowa, 617, 116 N. W. 695, 18 L. R. A. (n. s.) 223; *Serrell* v. *Forbes*, 106 App. Div. 482, 94 N. Y. Supp. 805, affirmed 185 N. Y. 572, 78 N. E. 1112; *Griffin* v. *Lear*, 123 Wash. 191, 212 Pac. 271.) There need not be an expression of willingness to pay or any promise to do so. It is sufficient that the debtor acknowledge that he owes the debt and that it remains unpaid. (*Berryman* v. *Becker*, 173 Mo. App. 346, 158 S. W. 899.) If the acknowledgment be complete, the law will supply the promise to pay. (*Outwaters* v. *Brownlee*, 22 Cal. App. 535, 135 Pac. 300.) It is not necessary that the writing specifically describe the debt or mention its exact amount. (*Senninger* v. *Rowley*, supra; 37 C. J. 1102.) All that is in general required is that by fair construction the writing shall constitute an admission that the claim is a subsisting debt, unaccompanied by any circumstances repelling the presumption of the party's willingness or intention to pay. (*Galvin* v. *O'Gorman*, supra; 37 C. J. 1126.)

We think the correspondence set out above, when interpreted in the light of the citations just given, is sufficient to show an admission that the debt was due and unpaid, and contains nothing to dispute the presumption of a promise to pay.

(2) It is true plaintiff was not the holder of the note in suit when the letter was written, but the holder who acquires such an obligation succeeds to all the rights which the original holder had (*Anderson* v. *Border*, 75 Mont. 516, 244 Pac. 494), and if the plaintiff here shows the promise was made to one through whom title came to the plaintiff, the promise accrues to the benefit of the plaintiff. The fact that plaintiff acquired title after the letter was written is immaterial in enforcing any rights Jones or his executor could have enforced, had the executor and not the plaintiff brought this

action, and all such rights passed to plaintiff in the sale of the note and assignment of the mortgage. The sale and assignment are not questioned, and if plaintiff's predecessor had a right of action, so has the plaintiff.

(3) Was Johnson an agent of the plaintiff so that a promise made to Johnson would accrue to the benefit of the plaintiff?

The letter written by Gertrude O'Brien clearly shows she believed Johnson represented the owner. Johnson testified that he was an employee of Barnes Brothers when the loan was made and familiar with its history throughout; that he had more or less to do with the loan from the time it was made, and was interested in having it kept in good shape and paid; that he was connected with Barnes Brothers from 1909 until that concern was liquidated in 1925, and succeeded to and owned the business thereafter; that he handled the O'Brien loan when it was made and looked after it more or less thereafter; that his letter (Plaintiff's Exhibit 17), related to the O'Brien loan No. 20640. When asked if he were the agent of the plaintiff, he stated he had tried to help him collect the mortgage, had not been employed in the pending action by plaintiff, but always tried to help the holders of first mortgages collect their loans, obviously meaning such holders of mortgages as were made through Barnes Brothers. He testified that he wrote Plaintiff's Exhibit No. 17, heretofore recited, received in reply Plaintiff's Exhibit 16, and replied to that with a letter of which Plaintiff's Exhibit 21 is a copy; that the plaintiff requested him to represent him in collecting the note, but that he had never been requested directly to represent Jones or the Jones estate in any attempt to realize on the O'Brien mortgage and note, but had some correspondence with the plaintiff while the latter was cashier of a Wisconsin bank through which Jones first obtained the O'Brien loan. Plaintiff's Exhibit 22 is a letter written by plaintiff as such cashier to Johnson in which the O'Brien loan is referred to, and such reference is obviously made to Exhibit 16, the O'Brien letter, which we have held is a sufficient acknowledg-

ment of the debt, and which Johnson sent to plaintiff in order to advise the plaintiff of the situation in regard to his loan, and it will be noted that in the letter of the plaintiff to Johnson in reply to the advice he had just received about the O'Brien loan, speaking for the Jones estate, plaintiff advised Johnson that he might assure the O'Briens that "the Jones estate will not disturb them before fall." Johnson resided at Wayzata, Minnesota, and the plaintiff at Waukeshaw, Wisconsin, when this correspondence passed between them. Johnson testified that he acted for Barnes Brothers in the matter both before and after that concern was liquidated. He denied that he was principally concerned in his second mortgage, but that his first concern was about the first mortgage; he admitted in effect, however, that his interest in the first mortgage was due to his desire to collect the second mortgage.

The plaintiff's testimony pertinent to the question of agency between Johnson and himself was that plaintiff had been connected with a bank in Waukeshaw for about 45 years, and had dealings with Barnes Brothers at various times in the way of buying real estate mortgages from them and selling the same to customers of the bank, and that he had sold the O'Brien mortgage to T. E. Jones; that collection of such loans as were acquired by his bank through Barnes Brothers was made through the same channel; that after Barnes Brothers went into liquidation, E. L. Johnson had handled the loans and made the collections for him and his bank, and among such loans was the O'Brien loan; that Johnson had authority from him to represent him to look after and collect the O'Brien loan; that his bank acted as the agent of Jones and later of the Jones estate at all times in collecting the payments on the O'Brien loan, and such relation existed at the time Exhibit 16 was written; that he dealt with Johnson as the agent of Barnes Brothers and after the liquidation of Barnes Brothers he regarded Johnson as his agent "down to this minute."

While the relation of principal and agent between the plaintiff and Johnson is not entirely clear and the question is a close one, it is very clear that the holders of the mortgage and

note and the makers thereof have, at all times, looked to Barnes Brothers and Johnson as the successor of that concern as a sort of clearing house to take care of anything relating to the transaction. And if it were the defendants who were trying to establish the liability of the plaintiff for any act or thing done by Johnson as the agent of the plaintiff, we do not think the plaintiff could escape liability under the facts as shown here tending to establish such agency. Furthermore, it is clear that the plaintiff, acting for the executor of the Jones estate, used Johnson as a medium and his agent to assure defendants that the Jones estate would "not disturb them before fall." Obviously, defendants recognized Johnson as speaking with authority and the agent of the holders of the mortgage, otherwise they would have vacated and turned the land over to the mortgage holder as they, in substance, expressed the intention of doing if they could not have more time to pay.

We think that under all the circumstances the question of agency here was properly determined by the trial court favorably to the contentions of the plaintiff, and that the acknowledgment of the debt made by defendants' letter (Plaintiff's Exhibit 16) inures to the benefit of plaintiff.

The O'Briens are joint obligors on the note and mortgage, and the promise of one obligor to a joint obligation will not bind the other, in the absence of authority granted to the one who makes the promise or acknowledgment for the other, or unless the act can be shown to have been ratified. It is well established in this jurisdiction that the acknowledgment of one party to a joint obligation of a subsisting indebtedness that is barred by the statute of limitations will not toll the statute as against the party not acknowledging the obligation. (*Turner* v. *Powell,* 85 Mont. 241, 278 Pac. 512, and cases cited.) The evidence clearly establishes the fact that Gertrude O'Brien signed Exhibit 16 "Mr. and Mrs. Wm. O'Brien," although she denied that she ever received any letter from E. L. Johnson, or at least could not remember that she ever did. Both the O'Briens denied that William O'Brien knew

anything about the letter being written, that William O'Brien did not request his wife to write any such letter for him, nor did he at any time ratify her act. William O'Brien testified that he had never received any letter from anyone in which any reference was made to the loan or asking for any payments thereon either of principal or interest. It appears from his testimony that the loan was never referred to in any letter he ever received, or orally by his wife or anyone else. He readily remembered that he and his wife had kept the taxes paid up and that neither plaintiff nor anyone else had ever paid such taxes. He also remembered that his wife paid $174 admitted to have been paid on the note, and that it was a check of "the boy's, Bud," but denied any knowledge whatever of the exhibits received in evidence written by his wife relating to the loan and had not seen Exhibit 16 "until today." He had never received any letters from Barnes Brothers, E. L. Johnson, or the plaintiff. He admitted giving the mortgage, but apparently took no further interest in it and made no inquiry about what became of it or the payments he had contracted to make. He testified that he and his wife had lived together at Cut Bank for more than thirty years: that he worked on the railroad and usually turned his check over to his wife, who paid the bills; that he never wrote any letters concerning any business matters, but that "his wife did that, or most of it." She looked after the business affairs. Her actions in taking care of the business matters of the household and paying bills and accounts had his approval, but on redirect examination by his attorney he denied that he authorized his wife to write Exhibit 16 or sign his name to it.

We think the testimony of the O'Briens is sufficient to support the conclusion that Mrs. O'Brien, under the rule of implied agency, was authorized to act in the matter involved here for both herself and her husband. He testified that he seldom wrote a letter, that his wife attended to that. The letters in evidence between Mrs. O'Brien and Johnson confirm such testimony. Mrs. O'Brien paid $174 on the loan, obtaining most, if not all the money from Bud, the son; the husband

knew of the wife's getting the money from Bud, but appears to have taken no active part in the transaction; the husband turned his checks received for wages as an employee of the railroad company over to the wife, and she paid the bills; letters written by the wife to Johnson about the mortgage were signed ''Mr. and Mrs. Wm. O'Brien''; the husband never received any letters from Johnson or anyone else about the mortgage, but both Exhibits 17 and 21 were addressed to him; he knew there was a mortgage on the homestead but went about his duty earning a living, turned his earnings over to his wife and left the handling of business matters to her. Such is the substance of the testimony of defendants upon which we found the conclusion that Gertrude O'Brien was, by implication, the authorized agent of William O'Brien to act for him in all matters relating to the obligations of himself and wife involved in this action, and we think such testimony is sufficient to support the judgment rendered by the trial court.

We find no material error in the record and the judgment is therefore affirmed.

Associate Justices Matthews, Stewart and Anderson concur.

Mr. Chief Justice Sands, being absent, did not hear the argument and takes no part in the foregoing decision.