WELLS, *Appellant*, v. HARGRAVE, *Administrator*.

Division One, November 6, 1893.

1. **Statute of Limitations:** ACKNOWLEDGMENT OF DEBT: STATUTE. An acknowledgment, in writing, of a debt to remove the bar of the statute of limitations, must, under Revised Statutes, 1889, section 6793, contain an unqalified and direct admission of a present subsisting debt.

2. ———: ———: ———. Where the acknowledgment is accompanied with conditions or circumstances which repel or rebut the intention to pay or if the expressions used, be vague, equivocal or ambiguous leading to no certain or determining conclusion, the statute will not be satisfied.

*Appeal from Putnam Circuit Court.*—HON. ANDREW ELLISON, Judge.

AFFIRMED.

*A. W. Mullins* with *J. E. Burnham* for appellant.

(1) The evidence in the case was clear, direct and conclusive that the defendant's intestate was indebted to the plaintiff from the year 1863, to the time of his, said James W. Wells', death. And the letter to plaintiff, dated September 5, 1880, obviously contains an acknowledgment of such indebtedness, and this is all that the statute requires. 2 Revised Statutes, 1889,

sec. 6793, p. 1594; *Chidsey v. Powell,* 91 Mo. 622; *Mastin v. Branham,* 86 Mo. 643; *Boyd v. Hurlbut,* 41 Mo. 264; *Elliott v. Leake,* 5 Mo. 208. (2) And where there is a general acknowledgment of indebtedness in writing, the burden of proof is upon the defendant to show that it related to a different demand from that in controversy. *Boyd v. Hurlbut,* 41 Mo. 264; 2 Greenleaf on Evidence, sec. 441; *Mastin v. Branham,* 86 Mo. 643. (3) If the letter, in evidence, to plaintiff from James W. Wells does contain an acknowledgment of his indebtness to plaintiff, then from such acknowledgment, the law implies an obligation and promise to pay. It follows, therefore, that the circuit court erred in refusing plaintiff's first, second and fifth declarations of law and in giving defendant's third. (Authorities *supra.*) (4) The letter before mentioned explains how it was that the notes and mortgage from James W. Wells to plaintiff were cancelled. This was done by the debtor himself, as acknowledged by him, and without payment, and manifestly without the knowledge of the plaintiff. In view of the evidence and attending circumstances the circuit court proceeded on an erroneous theory in giving for defendant the declarations of law numbered 2 and 4. (5) In giving construction to the letter from James W. Wells to plaintiff the intention of the writer should, if possible, be arrived at, and, as an aid thereto the object in view, the situation of the parties and all the attending circumstances should be considered. *Cartwright v. Callaway County,* 10 Mo. 667; *Crawford v. Elliott,* 78 Mo. 500; *Dobbins v. Edmonds,* 18 Mo. App. 315; *Loan & Trust Co. v. Bank,* 15 Wis. 480; *Partridge v. White,* 59 Me. 564; *Curtis v. Phillips,* 5 Mich. 112; 2 Story on Contracts [4 Ed.], secs. 631–634; 2 Parsons on Contracts [5 Ed.], pp. 499–501.

*Huston & Parrish* for respondent.

The lower court did not err in declaring as a matter of law that the letter read in evidence was insufficient to take the case out of the statute of limitations. There is not a word in it not entirely consistent with the theory that the deceased was simply giving a statement of a past and complete transaction; to give it the strongest construction possible against the dead man it can only be construed as equivocal, vague, indeterminate and leading to no certain conclusion. This is entirely insufficient. *Bell v. Morrisson,* 1 Peters, 351; *Whetzell v. Bussard,* 11 Wheat. 309; *Tenyzk v. Wing,* 1 Mich. 40; *Allen v. Webster,* 15 Wend. 244; *McKeen v. Thorp,* 4 Mo. 256; *Buckner v. Wheatin,* 4 Mo. 100; *Davis v. Deering,* 6 Mo. 21; *Boyd v. Hurlbut,* 41 Mo. 264; *Chambers v. Ruby,* 47 Mo. 99; *Morton v. Brenham,* 86 Mo. 643; *Chidsey v. Powell,* 91 Mo. 627; *Kirkbride v. Gash,* 34 Mo. App. 256.

MACFARLANE, J.—This suit originated in the probate court of Putnam county, on a claim presented for allowance September 4, 1890, in which plaintiff charged in substance that on October 19, 1863, he sold and conveyed, by attorney, to plaintiff's intestate two hundred and fifty-eight acres of land lying in Putnam county, for the sum of $1,290, for which he gave his two promissory notes for $645, each, one payable January 1, 1868, and the other January 1, 1869, both bearing ten per cent. interest, and also gave back a deed of trust on the land to secure them; that the notes had never been paid; that on the fifth day of September, 1880, deceased wrote to plaintiff, and thereby, in writing, acknowledged and promised to pay the same.

The claim was rejected by the probate court and on an appeal to the circuit court, and a retrial therein,

judgment was rendered for defendant, and plaintiff appealed to this court.

Upon the trial in the circuit court the sale of the land by plaintiff and the execution of the deed, deed of trust, and notes were proved, dated respectively as charged in the claim.

Plaintiff then read a letter from deceased to himself in California dated September 5, 1880, as follows:

"Once more, after a long silence, I again write to you. * * * I received your letter three weeks since and think I received the other one. I was working at a sell out, kept waiting to see the result, and expected it soon, consequently neglected to write when I should have wrote, but for no other motive or cause and hope no harm to come of it. No sale yet, and now don't know as we will make the sale, but not certain. I am holding for $20 per acre and offered $15, but not certain they would stand at that. I am not fully made up my mind what I will do. If I should sell, in that event may visit you as the trip would soon be made by R. R. I am not going to stop here if I can do well by going away. I am improving the farm all I can—makes it better to keep or better to sell. I am getting things in fair shape to make some money on the farm, if I stay on it and have health and luck. Will make you a statement of what I got of you in land purchases. The amount was two hundred and ninety acres and seventy-six hundredths (298.76) acres; the price was five dollars per acre or ($1,548.05) fifteen hundred and forty-eight dollars and five cents, all to be due January, 1869. This statement I make from recollection and pretty sure correct, but I hold the original papers, and cancelled them all in the Texas trade and trip. My intentions are true and faithful, but my abilities are rather cramped now until can sell or make some money otherwise."

The testimony of a brother, sister, and brother-in-law of deceased was to the effect that deceased, just before his death, acknowledged to them verbally his indebtedness to plaintiff. The evidence showed further that on the eighteenth day of May, 1867, plaintiff made to deceased a general power of attorney and that on the nineteenth day of April 1878, under this power of attorney he entered satisfaction of the deed of trust. The notes were in possession of deceased at his death, among some other old papers, were marked paid and the name of the maker had been partly torn off.

It appeared also that in 1878, about the date of the satisfaction of the deed of trust, deceased sold and conveyed this land in exchange for some Texas property, but it was afterwards conveyed back to him.

In addition to the two hundred and fifty-eight acres of land conveyed by plaintiff to deceased in Putnam county he also conveyed to him forty acres in Schuyler county.

At request of defendant the court gave to the jury the following instruction:

"3. The letter purporting to have been written by the deceased, James W. Wells, dated September 5, 1880, and which has been read in evidence by plaintiff, does not constitute a sufficient acknowledgment or promise to pay the notes sued on to take the case out of the statute of limitations."

The court refused an instruction asked by plaintiff declaring the writing sufficient.

The defense was that the action was brrred by the statute of limitations.

The question for decision is, whether the letter read in evidence, is a sufficient acknowledgment or promise to remove the bar of the statute of limitations.

The statute provides that "no acknowledgment or promise hereafter made shall be evidence of a new or continuing contract, whereby to take any case out of the operation of the provisions of this article, or deprive any party of the benefit thereof, unless such acknowledgment or promise be made or contained by, or in, some writing subscribed by the party chargeable thereby." R. S. 1889, sec. 6793.

It is held, in construing this statute, that a written acknowledgment by the debtor, made to the creditor, that he owed the debt and that it remained unpaid, was sufficient to remove the bar. A promise to pay will be implied. *Elliott v. Leake*, 5 Mo. 209; *Chidsey v. Powell*, 91 Mo. 626.

The acknowledgment, in order to satisfy the statute, should contain an unqualified and direct admission of a present subsisting debt. "If the acknowledgment is accompanied with conditions or circumstances which repel or rebut the presumption of a promise or intention to pay; or if the expressions used be vague, equivocal or ambiguous, leading to no certain or determinate conclusion, they will not satisfy the requirements of the statute." *Carr's Adm'r v. Hurlbut's Adm'x*, 41 Mo. 267; *Chambers v. Rubey*, 47 Mo. 99; *Kirkbride v. Gash*, 34 Mo. App. 258.

A recent writer says: "Thus it will be seen that an admission of the debt will be sufficient, although the exact amount payable is disputed, or remains to be proved. But in all cases the acknowledgment must be in terms so distinct and unqualified that a promise to pay upon request, or at some fixed time, may reasonably be inferred from it. It must be clear and explicit, and not incumbered with any conditions. It is not necessary that the promise should be actual or express, provided the other necessary facts are shown. A clear,

distinct and unequivocal acknowledgment of a debt is sufficient " 1 Wood on Limitations, sec. 68, p. 183.

The part of the letter relied on which bears on the question in hand introduces the subject by informing his brother of the subject about which he would make a statement. He says: "Will make a statement of what I got of you in land purchases." He then proceeds as though merely giving requested information of a past transaction. "The amount was two hundred and ninety-eight and seventy-six one-hundredths acres; the price was $5 per acre, or $1,548.05, all to be due January, 1869. This statement I make from recollection, and pretty sure correct, but I hold the original papers and cancelled them all in the Texas trade and trip." So far there is nothing said that suggests the acknowledgment of a subsisting debt. It is a mere narration of a past transaction. It does however show that the writer had previously purchased from plaintiff land, for which he was to pay $1,548.05 in January, 1869. The writer does not acknowledge that the debt existed at the time of writing the letter. The fact that he held the original papers which had been cancelled, rather implied the satisfaction of the debt. Reading this narrative in connection with the concluding sentence, supposing both to relate to the same subject, which is not at all clear, we do not think anything is added to the legal effect of the writing. The words, "my intentions are true and faithful," if intended to refer to the purchase price of the land, previously mentioned, might be construed into a present intention to pay the debt at some future time. We do not think this can be construed into a direct and unqualified admission that he still owed the debt. Had he stopped here there would have been more doubt. A promise to pay the debt mentioned might be implied. The addition of the words, "but my abilities are rather cramped

now until can sell, or make some money otherwise," very clearly places a condition on any promise implied from the former statements.

Taking the whole writing together, we think it is wanting in that direct, unambiguous and unequivocal character of acknowledgment or promise which is necessary to satisfy the requirements of the statute. Judgment affirmed. All concur.