## ST. CHARLES SAVINGS BANK, Appellant, v. J. W. THOMPSON.

Division Two, July 16, 1920.

1. **DEPARTURE: Different Subject-matter: Limitations.** If the subject-matter of the original and amended petitions are not the same, different evidence being required to support them, the amended petition is not an amendment, but the statement of a different

cause of action, and does not toll the Statute of Limitations, but marks the commencement of a new proceeding.

2. ———: ———: Dismissal: New Action: Limitation. If the subject-matter of the original and amended petitions were the same and the trial court on that account sustained a demurrer to the amended petition and struck it from the files, and thereupon plaintiff within one year instituted a second suit the subject-matter of which was identically the same as that stated in the amended petition, the second suit was barred by limitations if the subject-matter of the amended petition was barred at the time it was filed.

3. ———: ———: New Suit Within Year: Dismissal Necessary. It is a prerequisite to the right to bring the new suit authorized by the statute (Sec. 1900, R. S. 1909) declaring that if a plaintiff suffer nonsuit he may bring a new suit within one year after nonsuit suffered, that the first suit be dismissed. By bringing a suit on one cause of action within ten years, he cannot by filing an amended petition bring to life a different cause of action already barred, nor by bringing another suit on said barred subject-matter while said former suit is pending.

4. ———: ———: ———: Same Subject-matter: Limitations. Plaintiff cannot avail himself of the provisions of the statute (Sec. 1900, R. S. 1909) authorizing the bringing of a new suit within one year after nonsuit suffered, unless the subject-matter of both suits are the same and require the same evidence to sustain them; he cannot bring a suit on one cause of action, suffer nonsuit therein, and by bringing another suit within one year involving a different subject-matter and requiring different proof, avoid the effect of the ten-year Statute of Limitations which had run against said subject-matter before said second suit was filed.

5. LIMITATIONS: When Statute Begins To Run: Demand. The Statute of Limitations begins to run from the date of the instrument sued on, and not from the date of demand for its payment. Nor is the running of the statute interfered with by failure to make demand.

6. ———: ———: Collateral. Nor will a deposit of collateral security with the note affect the running of the Statute of Limitations; and whether the instrument sued on be regarded as a demand note with a contract attached, or a collateral obligation, it is barred in ten years from the date of the demand note.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

AFFIRMED.

*C. W. Wilson, Jones, Hocker, Sullivan & Angert, E. P. Tralles* and *Theodore C. Bruere* for appellant.

(1) The judgment holding the matter in controversy to be a thing adjudicated in a former suit between the same parties is patent reversible error, because it plainly appears there had never been any judgment on the merits of the controversy between the parties. All that appears in fact is that in a former suit upon demurrer to plaintiff's petition the court had entered an order sustaining the demurrer upon the ground that the petition failed to state a cause of action and because on the face of the petition the cause of action appeared to be barred by the Statute of Limitations, and granting the plaintiff time in which to plead further. No final judgment was entered on the demurrer, but the plaintiff appeared and took a voluntary nonsuit in the case. It is settled law in this State: First. "After demurrer the plaintiff may amend, of course, with or without costs as the court may order." R. S. 1909, sec. 1803. Second. A plaintiff has a right to dismiss his suit, or take a nonsuit, at any time before his case is finally submitted to the court or jury, on its merits. R. S. 1909, sec. 1908. Third. An order sustaining a demurrer to a petition is not such a former adjudication as will preclude a recovery for the same cause in a subsequent action. Wells v. Moore, 49 Mo. 230; Garrett v. Greenwell, 92 Mo. 123; Baldwin v. Davidson, 139 Mo. 126; 21 Am. & Eng. Enc. Law (1 Ed.), 271; Bennett v. Bank, 61 Mo. App. 297; Swing v. Furniture Co., 150 Mo. App. 574. There had never been any adjudication on the merits in this case. The judgment of the court sustaining the plea of *res adjudicata* is supported by neither facts nor law, and constitutes reversible error. (2) The judgment holding that the plaintiff's cause of action was barred by the ten-year Statute of Limitations, under the

undisputed facts, is contrary to law, and constitutes reversible error, because: First. To hold that the cause of action on the collateral note and contract in suit accrued on the day of its date violates the manifest intention of the parties. The consideration for the contract was an extension of time for the payment of the debt. The cause of action did not accrue until the Quarry Company finally defaulted in the payment of its debt on December 19, 1905, and demand made on the defendant September 24, 1906. Jameson v. Jameson, 72 Mo. 642; Boyd v. Buchanan, 176 Mo. App. 60; Wood on Limitations, p. 322; 7 Cyc. 849; Campbell v. Whorisky, 170 Mass. 63; Hartland v. Jukes, 1 H. & C. 667; 7 Cyc. 855. Second. The extension of the principal notes in the bank was of the very essence of the collateral contract. The court must consider the whole transaction in all its parts, and consider the whole together, the consideration for the collateral note and contract in suit, the circumstances under which it was given and the purpose intended to be effected by the parties, and thus ascertain and enforce the true interest of the parties. Duvelly v. Duvelly, 132 Mass. 509; Davis & Ranken v. Hendrix, 59 Mo. App. 449; Leonard v. Railroad, 54 Mo. App. 301; B. and L. Assn. v. Obert, 169 Mo. 515; Tetley v. McElmany, 204 Mo. 394; Construction Co. v. Tie Co., 185 Mo. 62-69; Herick v. Frisbie, 66 Mo. App. 19, 20; McDonald v. Wolff, 47 Mo. App. 309; Morey v. Clopton, 103 Mo. App. 380; Wilson v. Wilson, 115 Mo. App. 648. (3) Even if it be held that plaintiff's right of action accrued as of the day of the date of the contract in suit, January 2, 1901, still the plaintiff's recovery in this action is not barred by limitation. On December 17, 1906 plaintiff brought suit against defendant, for the same cause in the St. Louis Circuit Court. Plaintiff took a nonsuit in that case April 30, 1914, and brought the pending suit within one year after the nonsuit. That under the statute prevented the bar. R. S. 1909, sec. 1900; State ex rel. v. O'Gorman, 75 Mo. 378; Wettmore

v. Crouch, 188 Mo. 647; Shaw v. Pershing, 57 Mo. 420; Heffernan v. Supreme Council, 40 Mo. App. 608; Wood v. Wortman, 85 Mo. 305; Lottman v. Barnett, 62 Mo. 170; Buse v. Transfer Co., 45 Mo. 463; Boone v. Slover, 66 Mo. 430, 436; Estes v. Fry, 166 Mo. 79; Lilly v. Tobbein, 103 Mo. 490; Norton v. Reed, 253 Mo. 253; Sonnenfeld v. Rosenthal, 247 Mo. 266; McMillen v. Reauma, 100 N. W. 166. The bringing of the second suit for the same cause, on March 10, 1913, did not abate the first suit of December 17, 1906. Courim Co. v. Gelleland and Hamlin, 98 Mo. App. 587; Land Co. v. Quinn, 172 Mo. 587; R. S. 1909, secs. 1800, 1804, 1806.

*Marshall & Henderson* and *Brownrigg & Mason* for respondent.

(1) Since the contract sued on is an obligation to pay upon demand, dated in the year 1901, and this suit was not brought until the year 1914, it is obviously barred unless there is something in the facts alleged and proven which operates to toll the Statute of Limitations. (2) A contract is not relieved from the operation of the statute because the obligation is payable on demand. The Statute of Limitations on a demand note runs from its date and not from demand. Easton v. McAllister, 1 Mo. 662; Collins v. Warburton, 3 Mo. 203; O'Fallon v. Kern, 10 Mo. 554; Darby v. Darby, 14 L. R. A. 1208. See full discussion of subject in 136 Am. St. 470. (3) Any writing which promises to pay money is barred in ten years, whether payment is certain or contingent, and "a demand does not alter the case." Rowe v. Mettelberg, 96 Mo. App. 493. (4) No demand is necessary on a demand note. A suit is a demand. Bank v. Ward, 35 Barb. 637; Fell's Point Sav. Inst. v. Weedon, 18 Md. 320. (5) A party cannot stop the running of the Statute of Limitations by failing to make a demand. Nor will a demand extend the statute. Steele v. Steele, 25 Pa. 156; Pittsburgh v. Byers, 32 Pa. 24. (6) The col-

lateral obligation of J. W. Thompson to pay $20,000 on demand is an entirely different contract from the note evidencing the indebtedness of the Thompson and Gray Quarry Company which it was pledged to secure, and the maturity of the principal debt or extensions of the maturity thereof in no way affect the maturity of the collateral obligation pledged. When the obligation pledged is at maturity the pledgee may enforce payment whether the principal debt is due or not. Jones on Pledges & Collateral Securities, sec. 665; Dougherty v. Wiles, 156 S. W. 1090; Bizzell v. Roberts, 156 N. C. 274; Seeley v. Wickstrom, 49 Neb. 730. (7) The fact that the indebtedness of the Quarry Company is not barred does not affect the question as to the collateral contract. In re Hartraft's Est., 153 Pa. St. 530. (8) The allegation contained in the petition in this case to the effect that the plaintiff filed suit in 1906 upon the same cause of action as that pleaded in the case at bar, is obviously contrary to the fact. The first suit filed was filed on December 18, 1906. The original petition was a suit upon an ordinary demand promissory-note for $20,000. It stated an unconditional obligation to pay a sum certain upon demand. The present suit sets forth a conditional obligation to pay, not a sum certain, but to pay, up to $20,000, so much as should equal the particular unpaid indebtedness of the Thompson & Gray Quarry Company. (9) The recognized tests by which to determine whether or not two petitions state substantially the same cause of action are: (a) That the same evidence will support both petitions. (b) That the same measure of damages will apply to both. If both of these fail the causes of action are not substantially the same. Scovill v. Glasner, 79 Mo. 449; Heman v. Glann, 129 Mo. 325. A comparison of the two petitions in question here clearly shows that both of these tests fail. To support the original petition in the first case, it was only necessary for the plaintiff to offer in evidence the original promissory note, an alleged veri-

fied copy of which was filed as an exhibit. That would have made a prima-facie case entitling the plaintiff to judgment against the defendant for $20,000, together with interest from the date of the note at the rate specified. In the case at bar the plaintiff must prove: First, the pledge of the note sued on; second, that the Quarry Company is still indebted to it and the amount of that indebtedness. And the measure of its recovery is not necessarily the face value of the note sued on with interest, but the present indebtedness, if any, to the plaintiff, of the Quarry Company up to the amount of $20,000 and interest on the note sued on. (10) The first amended petition in the first suit, filed September 9, 1912, which did state substantially the same cause of action as that stated in the present suit, cannot operate to relieve the plaintiff of the bar of the statute, because it was a substitution of a new cause of action and not an amendment of the original cause of action, and it is the law that where a so-called amended petition is filed after the statutory period, changing the cause of action, suit will nevertheless be barred. Wasson v. Boland, 136 Mo. App. 622. (11) The running of the statute is not affected by the filing on the 11th day of March, 1913, of the suit which stated substantially the same cause of action as is stated in the present case. The statutory period of ten years had already passed. It was not the same cause of action as that stated in the original petition in the first suit. (12) The bringing of the second suit does not operate to relieve the plaintiff of the bar of the statute under the provisions of sec. 1900, R. S. 1909, with reference to nonsuit, for the further reason that the second suit was brought while the first suit was still pending. In order that the provisions of Section 1900 may apply the second suit must be brought within one year after the dismissal of the first suit and not while the first suit is pending. Land Co. v. Quinn, 172 Mo. 586. (13) By reason of the fact that the contract sued on in this case shows on its face that the promise

to pay therein contained was pledged as collateral to the debt of a third person, it is not an unconditional promise to pay a sum certain. Haskell v. Lambert, 82 Mass. (16 Gray) 592.; Costello v. Crowell, 127 Mass. 293; American Nat. Bank v. Sprague, 14 R. I. 410. (14) When the court sustained the defendant's demurrer to the plaintiff's petition on the ground that the petition showed on its face that the cause of action was barred by the Statute of Limitations, that amounted to an adjudication in the defendant's favor that the cause of action stated in the present petition is barred, inasmuch as it appears and is alleged by the plaintiff in this case that the petition as to which this demurrer was sustained and the present petition state substantially the same causes of action. The fact that these decisions were, the one, upon motion, and the other, upon demurrer, inasmuch as they amounted to a final disposition of both of these cases upon the merits, does not make the decision any the less binding as judgments settling these issues between the parties. 1 Freeman on Judgments, sec. 327; Johnson v. Latta, 84 Mo. 142; State ex rel. v. Boothe, 68 Mo. 551; Johnson v. United Rys. Co., 243 Mo. 278.

WALKER, J.—In a suit on a demand note and contract brought in the Circuit Court of St. Louis there was a judgment for the defendant and plaintiff appealed. The note and contract are as follows:

"$20,000.00.          St. Charles, Mo., January 2, 1901.
"On demand I promise to pay to the order of the St. Charles Savings Bank twenty thousand dollars for value received, at the St. Charles Savings Bank, with interest from maturity at the rate of 8 per cent per annum.

"J. W. Thompson.
"St. Charles, Mo., January 2, 1901.

"Whereas, the undersigned executed and delivered to the St. Charles Savings Bank the above promissory note for the sum of twenty thousand dollars; now in order to secure the payment of said note and interest and of all indebtedness of the undersigned to the St. Charles Savings Bank, at present existing or as it may arise, from time to time, and in consideration of the premises and of an extension of time having been given by said bank to the undersigned by a renewal of the original indebtedness, as evidence by the aforesaid note, the undersigned has assigned and by virtue of said assignment hereby pledges and delivers to said St. Charles Savings Bank the following life insurance policy owned by the undersigned in good faith free from liens or claims of any kind whatever, to-wit:    (Policy No. 780494, issued by the Mutual Life Insurance Company of New York on my life July 2, 1896, for the sum of twenty thousand dollars for the term of my life.    This assignment is made with the express understanding that the above note is executed by me as collateral security not only for my own note and indebtedness to the St. Charles Savings Bank, but also as collateral security for the note and indebtedness of the Thompson & Gray Quarry Company to said bank and for any renewal of any or both of said two notes).

"And the undersigned hereby promises to pay all premiums and charges hereafter due on said policy of insurance and in case of any failure to do so, expressly authorizes said St. Charles Savings Bank to pay the same, and all such sums so paid hereafter by said St. Charles Savings Bank shall form and constitute a lien on the money insured by said policy and be considered a part of the indebtedness by the undersigned to said bank; and the undersigned hereby authorizes and empowers the St. Charles Savings Bank to collect and receipt for the amount of the said policy in the name of the undersigned and also to do and perform all acts necessary for the collection of said insurance money.    In

case of the non-payment of the above note when the same becomes due, the St. Charles Savings Bank is also hereby authorized and empowered to change and convert said life insurance policy into a paid-up or non-assessable policy, or to surrender said policy to the company which has issued the same for such sum as said bank may deem proper, the undersigned hereby ratifying and confirming all acts the St. Charles Savings Bank may do and perform in the premises.

"When at the death of the insured or at the time said policy becomes due and payable, the above note, or any part, or any renewal thereof, shall still remain due or unpaid, then said St. Charles Savings Bank shall apply the sum so paid on said policy, first, to the payment of all premiums and charges paid by it on said policy, and the cost for the collection of said policy of insurance, including attorneys' fees, if any; second, to the payment of the above note; and, third, to all other indebtedness of the undersigned to said bank, including protests and damages for the non-payment of such debt, and any balance remaining shall be paid to the executor or administrator of the undersigned or to the beneficiary, if any, named in said policy, according to the terms thereof.

"Witness my hand and seal this the day and year aforesaid.

"J. W. THOMPSON."

The plaintiff, St. Charles Savings Bank, is a banking corporation located and engaged in business in the City of St. Charles.

On June 29, 1900, the Thompson & Gray Quarry Company, a corporation, of which the defendant was president and principal stockholder, was indebted to plaintiff bank in the sum of $22,000, and at the same time the defendant was individually indebted to the plaintiff in the sum of $21,500. On that day the Thompson & Gray Quarry Company executed and delivered to

284 Mo.—6

plaintiff its note for $22,000, dated June 29, 1900, payable to the order of the plaintiff six months after the date thereof, with six per cent interest from date, and the defendant at the same time executed and delivered to plaintiff his individual note for the sum of $21,500, dated June 29, 1900, payable to the order of the plaintiff six months after date, with six per cent interest from date.

These two notes became due and payable January 2, 1901, and defendant and the Thompson & Gray Quarry Company desired to secure from the plaintiff an extension of time for the payment of the indebtedness represented by said notes, and in order to do so the defendant executed and delivered to the plaintiff the collateral note and contract upon which the present action is based, and the plaintiff in consideration of said note and contract granted an extension of time for the payment of the Thompson & Gray Quarry Company note and the Thompson individual note. Under this arrangement these two notes were renewed from time to time. The Thompson individual note was renewed until the indebtedness it represented was paid off about February 24, 1903. The Quarry Company note was renewed from time to time, the last renewal being made June 19, 1905, for a term of six months; this renewal fell due December 19, 1905. The Quarry Company failed to pay said note or any part of the same, and the plaintiff refused to grant any further extension for the payment of the indebtedness represented by the Quarry Company notes. This note of the Quarry Company with the accumulated interest thereon has never been paid, and is still due the plaintiff.

The Quarry Company having failed to pay its indebtedness of $22,000, the plaintiff on September 24, 1906, made formal demand on the defendant for the payment of the $20,000 evidenced by the note of January 2, 1901, under the terms of the contract attached thereto. Upon the defendant's failure to pay this demand,

the plaintiff, on December 18, 1906, commenced suit in the Circuit Court of the City of St. Louis against the defendant to enforce the payment of the $20,000 collateral note together with eight per cent interest thereon from date of demand.

The petition, instead of pleading the collateral note and contract as a conditional obligation, counted upon it as an unconditional note for the payment of money. Filed with the petition was a copy of the note only, the contract that had theretofore been attached to it being omitted. At the time of the commencement of the suit of December 18, 1906, and thereafter, the collateral note and contract in suit in the present action was the only note or obligation held by the plaintiff against the defendant.

The defendant appeared and filed an answer and cross-bill, in which, after denying the execution of the note as described in the petition, averred the execution and delivery to the plaintiff of the collateral note and contract in question, but stated that it was not given or intended to secure the payment of the Quarry Company note, but as collateral to secure the payment of defendant's individual debt to the bank, which debt he had subsequently paid. A reply was filed to the answer and cross-bill.

On March 20, 1912, the suit of December 18, 1906, was referred to a referee to try the issues. The matter came on for hearing, and plaintiff offered in evidence the collateral note and contract, and the defendant objected to its admission on the ground that it was not the obligation counted upon in the petition, and upon the referee holding the objection well taken the offer was withdrawn, the hearing before the referee was postponed, and plaintiff, on September 12, 1912, filed an amended petition, in which the plaintiff counted upon and filed therewith a verified copy of the collateral note and contract now in suit. On the same day the defend-

ant filed a motion to strike the amended petition from the files and to abate the suit. On December 3, 1912, the court sustained said motion on the third and fourth grounds therein set forth, which are as follows:

"Third. Because the amended petition is an abandonment of the original petition and attempts to substitute a new and totally different cause of action for the cause of action originally sued on, and it is in no sense an amendment of the cause of action sued on, and the court has no power or jurisdiction to permit the same to be done.

"Fourth. Because the amended petition operates to discontinue the original action, and the cause of action stated in the amended petition could only be enforced by a new independent action."

On March 11, 1913, the plaintiff instituted a second suit against the defendant upon the same collateral note and contract. Defendant filed a demurrer to this petition, and on November 10, 1913, the plaintiff filed an amended petition, to which the defendant demurred. The grounds of the demurrer were: (1) The amended petition stated no cause of action. (2) That any right of action upon the collateral obligation set forth in said petition was barred by the Statute of Limitations. The court sustained the demurrer.

Leave was given the plaintiff to plead further, which was extended from time to time. Plaintiff, however, filed no further pleading, but, before the expiration of the time it had been given to plead, it took a voluntary nonsuit.

The plaintiff, on the 3rd day of March, 1914, by leave of court, filed a second amended petition, counting upon the collateral note and contract now in suit. The defendant filed a motion to strike said petition from the files. Before this motion had been submitted to or acted upon by the court the plaintiff took a voluntary nonsuit.

On May 15, 1914, plaintiff brought a suit based on

St. Charles Sav. Bank v. Thompson.

the same cause of action as those above set forth. The
petition therein was identical in all of its material fea-
tures with that filed March 11, 1913, except the added
allegation "that in the original suit begun December 18,
1906, it took a voluntary nonsuit on April 30, 1914, and
that said suit was for the same cause of action here sued
on and that this action was instituted within one year
from the date of said nonsuit suffered and that the suit
instituted March 11, 1913, was upon the same contract
and for the same cause of action here sued on and that
plaintiff suffered a voluntary nonsuit in said action May.
14, 1914, and brought this suit within one year there-
after."

To this petition defendant filed an answer and cross-
bill, which, after a general denial, set up a number of
special defenses, among others that the matter sued on
had been adjudicated and determined in a former pro-
ceeding and that the cause of action was barred by the
Statute of Limitations. After a hearing the court held
that the matter had been adjudicated, and that any
cause of action which had existed in plaintiff's favor on
the collateral note and contract was barred by the ten-
year Statute of Limitations. Thus holding, the court
declined to try the remaining issues and entered judg-
ment for the defendant. The plaintiff thereupon perfect-
ed its appeal to this court. The issues for review are:

First, whether, under the facts, the matter in suit
was a thing adjudicated in a prior suit between the same
parties?

Second, whether, under the facts, the plaintiff's
cause of. action on the collateral note and contract in
suit was barred by the ten-year Statute of Limitations?

The note for $20,000 with the contract attached was,
for some unaccountable reason, detached from the latter,
and suit was brought thereon freed from any of the
explanatory purposes or reasons for its execution de-
fined in the contract. The suit as presented by the
pleadings was simply upon a demand note. The sub-
ject-matter, therefore, of this action was the note, and

the evidence necessary to establish the defendant's liability thereon was such as is required in ordinary actions of this character; for example, if there had been no denial of the execution, by simply introducing the note in evidence and resting. A different aspect is given to the proceeding in the amendment sought to be made to the original petition in that it is alleged that the note was given to secure the payment of other notes. The subject-matter, therefore, of this action was the contract, and entirely different evidence was necessary to sustain it than that required under the original pleading. The subject-matter of the original and the amended petitions not being the same, and different evidence being required to support each, the second petition was not an amendment but the statement of a different cause of action. [Broyles v. Eversmeyer, 262 Mo. l. c. 389; McHugh v. Transit Co., 190 Mo. 85; Ross v. Mineral Land Co., 162 Mo. l. c. 329; Liese v. Meyer, 143 Mo. 547; Scoville v. Glasner, 79 Mo. 449; Heman v. Glann, 129 Mo. 325.] Thus construed, the alleged amendment did not serve to toll the statute, which had begun to run from the date of the collateral note and contract, but marked the commencement of a new proceeding. [Warder v. Henry, 117 Mo. l. c. 541.] The statutory period of ten years applicable in cases of this character had then passed. [Sec. 1888, R. S. 1909; Gross v. Watts, 206 Mo. l. c. 397; Carr v. Thompson, 67 Mo. 472; Howe v. Mittleberg, 96 Mo. App. 492.]

If a disposition of the other questions were not deemed necessary this would suffice to determine this case adversely to the plaintiff. However, upon the trial court sustaining defendant's motion to strike the amended petition from the files, the plaintiff abandoned the suit by refusing to plead further; and on March 11, 1913, brought a second suit identical in all of its issuable facts to that embodied in the so-called amended petition filed in the original action. The trial court sustained a demurrer to this petition for the reasons set forth in the statement, and plaintiff abandoned the same

by refusing to plead further, and on May 14, 1914, took a voluntary nonsuit and instituted the action at bar on the succeeding day. The subject-matter of this suit was the note and the collateral contract, which had formed the basis for each of the preceding suits except the original action. It follows that if the action was barred at the time of the abandonment by the plaintiff of the original action and the bringing of a new suit, the cause of action pleaded in the instant case is likewise barred, the latter having been brought more than a year subsequent to the abandonment by the plaintiff of the original suit, or more than thirteen years after a right of action accrued on the collateral note and contract.

But it is contended that the action at bar comes within the saving clause of the nonsuit statute (Sec. 1900, R. S. 1909) which provides, in effect, so far as relevant here, that if a plaintiff suffer a nonsuit, he may from time to time bring a new action within one year after such nonsuit suffered, etc. Under the facts at bar the one-year saving clause provided in the above statute is inapplicable. Plaintiff filed the alleged amendment, which constituted in effect the bringing of a new suit, while the original action was pending. A dismissal of the first suit is a prerequisite to the right to bring the new suit authorized by the statute. [Land Co. v. Quinn, 172 Mo. 584; Wood v. Nortman, 85 Mo. 298; Briant v. Fudge, 63 Mo. 489.]

Furthermore, in order that a subsequent suit may operate to relieve the plaintiff from the bar of the above statute it must embody the issues set forth in the original action; in other words, it must involve the same subject-matter and require the same evidence to sustain it. These tests are as essential to the application of the statute as they are in determining whether a pleading is an amendment or a departure. We meant nothing more than this when we said, in Norton v. Reed, 253 Mo. l. c. 255, that "it is only necessary that it should involve an identical claim against which the old suit would have

stopped the running of the statute had it been prosecuted successfully to final judgment.'' The evident purpose of this statute was to extend for a year the plaintiff's right to bring the same action as theretofore instituted and in which nonsuit had been suffered and which otherwise would be barred by the general Statute of Limitations. [Karnes v. Ins. Co., 144 Mo. 413; Long v. Long, 141 Mo. 352.]

As affecting the contention as to the time when the Statute of Limitations begins to run in a case of this character, it will be sufficient to say that it has been long established in this jurisdiction that the operative effect of the statute begins from the date of the instrument and not from the date of the demand for its payment. [Easton v. McAllister, 1 Mo. 662; Collins v. Warburton, 3 Mo. 203; O'Fallon v. Kerr, 10 Mo. 554.] The reason for this ruling is that a note of this character is due at once and no demand is necessary, the suit being in the nature of a demand. [White's Bank v. Wand, 35 Barb. 637; Fell's Point Savings Institution v. Weedon, 18 Md. 320.]

The running of the statute is not interfered with by a failure to make a demand. If the rule were otherwise the holder could by his own act postpone the running of the statute. [Steele's Admr. v. Steele, 25 Pa. St. 156; Pittsburgh Railroad Co. v. Byers, 32 Pa. 24; Todd's Appeal, 24 Pa. 431; Morrison v. Mullin, 34 Pa. 12.]

The deposit of collateral with the note will not affect the Statute of Limitations, which will begin to run from the date of the note. [In re Hartranft Estate, 153 Pa. 530.] Whether the instrument upon which this action is based be regarded as a demand note with a contract attached or a collateral obligation, it is nevertheless barred under the ten year Statute of Limitations, Section 1888, Revised Statutes 1909. [State ex rel. v. Brown, 208 Mo. 613.]

We find a marked difference between the facts presented by the cases cited by counsel for plaintiff and

those at bar, so much so that they do not lend support to the contention that the trail court erred in its ruling in this case. Its judgment, therefore, is affirmed. All concur.