**WALLACE COTTON CO., a Corporation, Appellant,**

v.

**ESTATE OF Delle Murray WALLACE, Deceased, Respondent.**

No. 14366.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 18, 1986.

King E. Sidwell, Sikeston, for appellant.

James E. Reeves, Ward & Reeves, Caruthersville, for respondent.

FLANIGAN, Judge.

This action originated in the Probate Division of the Circuit Court of Dunklin County where Wallace Cotton Company, Inc., appellant here, filed a claim against the estate of Delle Murray Wallace, deceased. After an evidentiary hearing, the

trial court, sitting without a jury, disallowed the claim. The claimant appeals to this court as authorized by § 472.160.1(13).[1]

Decedent died testate on July 27, 1983. Letters testamentary were issued on August 19, 1983. First publication of notice of issuance of letters testamentary was made on September 15, 1983. The claim was filed on February 16, 1984, and later disallowed.

The claim stated, in part, "that there is due from [the estate] the sum of $42,982.10, on account of unpaid promissory notes executed by the deceased." Three notes were attached to and incorporated in the claim. None of the three notes bears any notation of payment.

At the hearing on the claim the parties stipulated that the three notes were executed by the decedent. Each of the three notes was payable to the claimant and each was payable on demand.[2] Each note bore interest at the rate of 4 percent per annum "from date, said interest payable annually, but if the interest be not paid annually, to become part of the principal and bear the same rate of interest." The three notes, with their respective exhibit numbers, are as follows:

| Exhibit Number | Date | Amount |
| --- | --- | --- |
| 1 | March 31, 1967 | $50,000.00 |
| 2 | August 31, 1968 | 2,833.34 |
| 3 | March 31, 1969 | 1,166.66 |

The claim contained the recitation that "credit has been given to such estate for all payments and offsets to which it is entitled and that the balance claimed as stated above is justly due." At the hearing the claimant introduced into evidence the three notes [3] on which the claim was based, to-

---

1. All references to statutes are to RSMo 1978, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

2. Exhibits 1 and 3 were expressly payable on demand; no time for payment was stated in Exhibit 2 and thus it, too, was payable on demand. § 400.3–108.

3. Neither Exhibit 2 nor Exhibit 3 contained any explanation for its making. Exhibit 1 bore interest at the rate of 4 percent, or $2,000, per

annum, plus interest at the same rate on unpaid interest. Exhibits 2 and 3 total $4,000, which is the amount of interest, on the unpaid principal, which Exhibit 1 would have earned up to March 31, 1969, the date of Exhibit 3. Exhibit 2 is in the amount of the interest due on Exhibit 1 on the date Exhibit 2 was issued, except for interest on the interest which was due on Exhibit 1 on March 31, 1968.

Aside from interest, the face amounts of Exhibits 1, 2 and 3 exceed the amount of the claim.

gether with a fourth note, claimant's Exhibit 4.

Exhibit 4, admittedly executed by the decedent, was a demand note payable to the claimant, in the amount of $5,832, and dated March 31, 1976. It bore interest at the rate of 4 percent per annum on the same terms contained in the three notes on which the claim was based. Exhibit 4 bore on its face the following language: "For: Accrued Interest Due on Notes Payable as of March 31, 1976."

When the claimant offered Exhibits 1, 2, and 3 into evidence, the attorneys for the estate objected on the ground they were barred by the 10–year statute of limitations, § 516.110.[4] The record makes it clear that the claimant relied upon Exhibit 4 as an acknowledgment by the decedent of the debts represented by Exhibits 1, 2, and 3 or as "a part payment of interest" on those three exhibits.

At the request of the attorneys for the estate, to which the claimant had no objection, the trial court took judicial notice of the record in Estate No. 10194, Estate of Fred Wallace. Decedent was the widow of Fred Wallace. Decedent's attorney asked the court to consider the fact that a claim in the amount of $50,000 had been filed by the instant claimant in the Fred Wallace estate.

No evidence was introduced by the claimant with respect to the amount or date of any payment made by decedent on Exhibits 1, 2 or 3, except to the extent that Exhibit 4 might be considered to be such.

The only witness produced by either side was William O. Wellman, the attorney for the decedent's estate. Mr. Wellman did not represent the estate in the defense of the instant claim but the estate produced

him as its witness. Portions of his testimony will be mentioned when the claimant's contentions are respectively discussed.

Section 400.3–307(2) reads: "When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense." The parties agree, at least tacitly, that the claimant was the holder of Exhibits 1, 2, and 3, that they were instruments, and that claimant produced them. Accordingly, the claimant was entitled to recover unless the estate established a defense.

The judgment of the trial court disallowing the claim does not contain a statement of the grounds for its decision.[5]

On this appeal claimant contends that only three defenses were relied on by the estate and that the record is insufficient to support any of those defenses. The three defenses are: (a) § 516.110(1)—the 10–year statute of limitations; (b) lack of consideration; (c) undue influence. In its brief as respondent, the estate takes the position that there was sufficient evidence on each of the three defenses to support the order of disallowance on any one of them.

The initial inquiry is, was the claim barred by the 10–year statute of limitations.

Section 516.110(1), the 10–year statute of limitations, applies to an action on a note. *Clark v. Powell's Estate*, 208 S.W. 31, 35 (Mo.1918). Exhibits 1, 2 and 3 are demand notes. With respect to a demand note, the statute of limitations "begins from the date of the instrument and not from the date of the demand for its payment." *St. Charles Sav. Bank v. Thompson*, 284 Mo. 72, 223 S.W. 734,

---

The claimant offered no evidence to explain the discrepancy.

**4.** Section 516.110(1) provides, in effect, that an action "upon any writing, whether sealed or unsealed, for any payment of money or property" shall be commenced within 10 years after the cause of action accrues.

**5.** Rule 73.01 permits any party, in a nonjury case, to request the trial court to file a brief

opinion containing a statement of the grounds for its decision. Rule 73.01 is not one of the rules which are enumerated in Rule 41.01(c) and which apply to proceedings in the probate division of the circuit court. Rule 41.01(e) authorizes the judge of the probate division to order that any or all of Rules 41 through 101 apply "in a particular matter." Neither side sought to invoke Rule 73.01 or Rule 41.01(e).

738[4] (1920). Where a note on its face shows that it is barred by the statute of limitations, the burden of proof is on the holder to show that the statute has been tolled by the making of a payment within the statutory period prior to the bringing of the action, *Hodgson v. Pixlee*, 272 S.W.2d 222, 225[2, 3] (Mo.1954); *Locke v. Warden*, 179 S.W.2d 624, 627[1] (Mo.App. 1944), or that the statute has been tolled for another cause. An acknowledgment or promise satisfying the requirements of § 516.320 is such a cause.

Section 516.320, as applicable here, reads:

"In actions founded on any contract, no acknowledgment or promise hereafter made shall be evidence of a new or continuing contract, whereby to take any case out of the operation of the provisions of [§ 516.110(1)], or deprive any party of the benefit thereof, unless such acknowledgment or promise be made or contained by or in some writing subscribed by the party chargeable thereby."

Section 516.340, as applicable here, reads:

"Nothing contained in [§ 516.320] shall alter, take away or lessen the effect of a payment of any principal or interest made by any person."

Claimant argues that Exhibit 4 constituted a "payment" of interest on Exhibits 1, 2 and 3, within the meaning of § 516.340. There was no evidence introduced by either side concerning the circumstances surrounding the execution of Exhibit 4, or any agreement of the parties with respect thereto, other than the language of Exhibit 4 itself.

If it be assumed, arguendo, that Exhibit 4 was given for the purpose of applying it to the interest due on Exhibits 1, 2 and 3, Exhibit 4, *if not itself paid*, did not constitute *payment* of interest on the other three notes in the absence of an agreement between the parties that Exhibit 4 was to be received as payment. *Block v. Dorman*, 51 Mo. 31, 32 (1872); *Appleton v. Kennon*, 19 Mo. 637, 640 (1854); *Security Trust Company v. Sherwood Homes*, 436 S.W.2d 776, 780[9] (Mo.App.1968); *Lynes v. Holt-Taylor Merc. Co.*, 268 S.W. 702, 705[4] (Mo.App.1925). Claimant adduced no evidence that Exhibit 4 was itself paid.[6]

In *Security Trust Company v. Sherwood Homes, Inc.*, supra, the court said, at p. 779:

"[T]he acceptance of a note does not constitute payment of a contemporaneous or preexisting debit unless there is an express agreement to that effect between the parties to the transaction. This decision recognizes the law of Missouri since 1854 when the Supreme Court in *Appleton v. Kennon*, 19 Mo. 637, ruled: 'The accepted note or bill must, by the agreement of the parties, be taken expressly as payment, otherwise it is but payment sub modo; it is not an extinguishment or satisfaction of the debt until the note be paid; then it becomes a full payment and discharge."

---

**6.** Section 400.3–603, which is § 3–603 of the Uniform Commercial Code, deals with payment or satisfaction of an instrument.

"The Code does not define 'payment' as used in U.C.C. § 3–603." 6 Anderson, Uniform Commercial Code, Third Ed., § 3–603:6, p. 542. The same author states, in § 3–603:7:

"The mere fact that a subsequent note is executed does not establish that there was a payment by which the original note was discharged.

The Code does not declare whether a subsequent commercial paper which is issued to the holder without the surrender by him of the original paper constitutes merely security for the payment of that original paper or operates as a payment which discharges it.

As the pre-Code law has not been displaced by the Code, it continues in force. Thus, the answer to whether a new note operates as additional security or discharges all prior obligations is a question of the intention of the parties, and since the effect of a new note is dependent upon the intent of the parties, it is necessary to examine all the surrounding 'facts and circumstances' of the transaction as 'the totality of all of the evidence is the true criteria (sic) to fix intent.'

When an additional note is given to the payee of the original note and he retains possession of both notes, it is presumed that the second note was given as additional security for the first note and not as payment thereof."

■ Claimant offered no evidence of an express agreement between decedent and claimant that the giving of Exhibit 4 constituted payment of the interest due on Exhibits 1, 2 and 3. That being so, until Exhibit 4 was itself paid, it did not become such payment. Accordingly, claimant failed to show that Exhibit 4 constituted *payment* of interest as contemplated by § 516.340 and that statute is no aid to claimant on the issue of whether the statute of limitations was tolled.

Claimant makes the alternative argument that Exhibit 4 constituted an "acknowledgment" or "promise" within the meaning of § 516.320, and thus had the effect of tolling the statute of limitations with respect to Exhibits 1, 2 and 3.

Exhibit 4 was of course a "writing, subscribed by the party chargeable therewith," but did it constitute "an acknowledgment or promise" of a new or continuing contract so as to take this case out of the operation of the 10–year statute?

"It is held, in construing [§ 516.320], that a written acknowledgment by the debtor, made to the creditor, that he owed the debt, and that it remained unpaid, was sufficient to remove the bar. A promise to pay will be implied.... The acknowledgment, in order to satisfy the statute, should contain an unqualified and direct admission of a present, subsisting debt. If the acknowledgment is accompanied with conditions or circumstances which repel or rebut the intention to pay, or if the expressions used be vague, equivocal, or ambiguous, leading to no certain or determining conclusion, they will not satisfy the requirements of the statute.... Thus it will be seen that the admission of the debt will be sufficient, although the exact amount payable is disputed, or remains to be proved. But in all cases the acknowledgment must be in terms so distinct and unqualified that a

promise to pay upon request, or at some fixed time, may reasonably be inferred from it. It must be clear and explicit, and not incumbered with any condition. It is not necessary that the promise should be express, provided the other necessary facts are shown. A clear, distinct, and unequivocal acknowledgment of a debt is sufficient." *Wells v. Hargrave*, 117 Mo. 563, 23 S.W. 885, 886 (1893). (Authorities omitted.)

Although Missouri cases have dealt with the issue of the sufficiency of different types of writings to be an "acknowledgment or promise" within § 516.320, the parties cite no Missouri cases, and this court has found none, dealing with the sufficiency of a promissory note to serve that purpose.[7] It may be that there is no such Missouri case simply because Missouri litigants have assumed that a promissory note is sufficient.

"The giving of a note or a renewal of a note will generally operate as an acknowledgment of a debt to take the case out of the operation of the statute of limitations whether given for the full debt or for a part thereof, or for interest thereon." 54 C.J.S. Lim. of Actions, § 314(d), p. 389. In *Wenman v. The Mohawk Insurance Company*, 13 Wend (N.Y.) 267, 28 Am.D. 464 (1835), the court held that the giving of a second note for the interest due upon two prior notes "was an acknowledgment of the debts, sufficient to raise a promise to pay, and to take the [prior notes] out of the operation of the statute." A similar holding was made in *Accola v. Giese*, 223 Wis. 431, 271 N.W. 19 (1937).

Exhibit 4 contained the decedent's express promise to pay, on demand, to the order of claimant, the sum of $5,832. It bore the notation, "For: Accrued Interest Due on Notes Payable as of March 31, 1976." It seems clear that Exhibit 4 meets the requirement of *Wells v. Hargrave*, su-

7. In *Block, Adm'r v. Dorman*, 51 Mo. 31, plaintiff sued on a note executed by defendant and one Deane. Defendant pleaded the statute of limitations as a defense. To circumvent that defense plaintiff showed that *Deane*, by express agreement, paid, by *Deane's* later note, (1872), the *interest* on the note sued on. The court held that Deane's note tolled the statute of limitations with respect to the note sued on because it was a part payment. The court did not discuss the question of whether it was an acknowledgment within the meaning of § 516.320, but of course the Deane note was not subscribed by the defendant.

pra, in that it contains an unqualified and direct admission of a present, subsisting debt. It is "clear and explicit and not incumbered with any condition." It is a "clear, distinct and unequivocal acknowledgment of a debt."

Respondent argues that Exhibit 4 is insufficient as an acknowledgment of Exhibits 1, 2 and 3 because Exhibit 4 "completely fails to identify the notes which [Exhibit 4] allegedly was intended to pay," and that Exhibit 4 is "not free from uncertainty as to the identification of the debt on which it is made."

Exhibit 4, on its face, shows that it was delivered "For: Accrued Interest Due on Notes Payable as of March 31, 1976." Exhibit 1 was dated March 31, 1967, and Exhibit 3 was dated March 31, 1969. Each called for interest payable annually. There was no evidence of any other notes, made by decedent to claimant, which called for annual interest payments payable on March 31. It is true that Exhibit 2 was dated August 31, 1968, but Exhibit 2, and for that matter Exhibit 3, was not essential in the proof of claimant's demand of $42,982.10, for Exhibit 1 alone on its face shows an indebtedness exceeding the demand.

Respondent argues that there were other notes given by decedent to claimant to which Exhibit 4 might have been directed. Respondent produced only two such notes, Exhibit A and Exhibit B. Exhibit A was dated March 30, 1971, and was a demand note in the amount of $2,500, with interest from date at 4 percent per annum. Since Exhibit 4, which was only for interest, substantially exceeded both the principal and interest of Exhibit A, it is not reasonable to find that Exhibit 4 was directed to the payment of the *interest* on Exhibit A. Moreover, the annual interest on Exhibit A was due on March 30, not March 31, and Exhibit 4 was directed to notes with interest payable on March 31.

Exhibit B was a demand note in the amount of $6,000, given by decedent to claimant, dated March 31, 1976. Exhibit B was payable on March 31, 1976, but it only began to draw interest, payable annually, from that date. Thus Exhibit 4 was not directed to Exhibit B.

In *Boyd, Adm'r of Carr, v. Hurlbut's Adm'x*, 41 Mo. 264 (1867), plaintiff brought suit on a note made by defendant's intestate. Defendant pleaded the statute of limitations as a defense. To circumvent the statute plaintiff relied upon letters written by defendant's intestate. The letters did not refer to any special or particular debt. The trial court ruled that the letters were insufficient to constitute an acknowledgment or promise and withdrew that issue from consideration by the jury. In holding that the trial court erred in so doing, the supreme court said, at p. 269:

"Now, in the case at bar, if the acknowledgment and promise were made in relation to the debt in suit they would be sufficient to remove the barrier of the statute and create an action at law. Whether they referred to this debt or to some other, was a question of fact to be tried by a jury. *As the plaintiff declared on a debt to which the acknowledgment might apply,* the jury would be at perfect liberty to infer that this was the identical debt, and bring in their verdict accordingly, *unless the defendant repelled the presumption or inference arising from the circumstances by showing a different debt, in reference to which the acknowledgment or declaration was made.*" (Emphasis added.)

To similar effect see *Berryman v. Becker*, 173 Mo.App. 346, 158 S.W. 899, 902[10] (1913).[8]

 Respondent did not, by introducing Exhibits A and B or otherwise, "show a different debt" to which Exhibit 4 was di-

---

**8.** Uniform Commercial Code Comment to § 400.3–307(2) reads, in pertinent part:

"Once signatures are proved or admitted, a holder makes out his case by mere production of the instrument, and is entitled to recover in the absence of any further evidence. The defendant has the burden of establishing any and all defenses, not only in the first instance but by a preponderance of the total evidence."

rected. That being so, the only reasonable finding was that Exhibit 4 was directed to Exhibit 1 (and Exhibit 3). This court holds that Exhibit 4 was an "acknowledgment or promise" within § 516.320 with respect to the debt evidenced by Exhibit 1 and thus the claim, sufficiently proved by Exhibit 1, was not barred by the 10-year statute of limitations. Respondent failed to establish the defense of § 516.110(1) and it is necessary to determine whether the order of disallowance may be supported on either of the other two defenses, lack of consideration or undue influence.

With respect to lack of consideration, the testimony of attorney Wellman eliminated it as a defense to Exhibit 1. Mr. Wellman testified that his firm represented the Estate of Fred Wallace during its administration. The beneficiaries of that estate were Delle Wallace, the instant decedent, and Murray Wallace. Delle Wallace was the widow of Fred Wallace and Murray Wallace was one of their three sons. The other sons were Kent Wallace and Glenn Wallace.

Mr. Wellman testified that Wallace Cotton Company, appellant here, filed a $50,-000 demand against the Estate of Fred Wallace. That estate was solvent. Delle Wallace gave Exhibit 1 to Wallace Cotton Company for the release, by it, of its claim against the Estate of Fred Wallace. Wallace Cotton Company filed, in the Fred Wallace Estate, a satisfaction of its claim against that estate.

Although Exhibit 1 is executed only by the instant decedent, Murray Wallace gave his mother his note for $27,000 as his proportionate share of the obligation represented by Exhibit 1. Mr. Wellman testified that Delle Wallace was the beneficiary of 46 percent of the net estate of Fred Wallace and Murray was the beneficiary of the other 54 percent.

"The discharge, release or forbearance of a right or claim against a third person, at the instance or request of the obligor, is sufficient consideration to support the latter's undertaking on a bill or note." 10 C.J.S. Bills and Notes, § 151(2), p. 619.

"[N]o consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind." § 400.3-408. That statement "includes a debt owed by a third person." 11 Am.Jur.2d Bills and Notes, § 229, p. 257; see Comment 2 to § 400.3-408. See also *Brainard v. Capelle,* 31 Mo. 428 (1862); *Connersville Casket Co. v. Gist,* 355 S.W.2d 374, 376[3] (Mo.App.1962). "A note given by the maker to pay the debt of a third person to the payee is supported by consideration." 6 Anderson, Uniform Commercial Code, Third Ed., § 3-408:20, p. 239.

■ The satisfaction by appellant of its claim against the Estate of Fred Wallace constituted consideration for Exhibit 1, and the defense of lack of consideration constituted no basis for the order of disallowance.

As to the defense of undue influence, the estate, as respondent here, argues that it presented "substantial evidence of the circumstances of the family relationship between Murray Wallace and decedent Delle Wallace," and that it presented "substantial evidence of undue influence in the execution of [Exhibits 1, 2 and 3]."

Although the respective wills of Fred Wallace and Delle Wallace were not introduced into evidence, attorney Wellman testified that the "testamentary plan" of Fred Wallace and Delle Wallace was that Fred's estate would pass to Delle Wallace and Murray Wallace and that Delle Wallace's estate would pass to the other two sons, Glenn and Kent.

Although Mr. Wellman testified that his firm had represented the Wallace family for 27 years, he, himself, did not have "any lengthy conversations" with Mrs. Wallace until the end of 1972, at which time he started doing "all of the work for Mrs. Wallace." Wellman said that when Mrs. Wallace came to the law office to discuss her affairs, she was usually accompanied by Murray, but there were other occasions when she was with one of the other two sons. He said that she seemed to rely

upon Murray to a certain extent with regard to taking care of her business affairs. On several occasions Mrs. Wallace discussed with him her will and federal estate taxes. On those occasions Mrs. Wallace mentioned Exhibit 1 as being one of her debts, and Mr. Wellman discussed with her the matter of paying it, so far as the "liquidity" of her estate was concerned. Wellman testified he was not familiar "with the circumstances surrounding the execution of Exhibit 1."

The parties stipulated that at the time Exhibits 1, 2 and 3 were executed, and indeed through 1981, Glenn Wallace was president of Wallace Cotton Company, the claimant, Kent Wallace was vice president, and Murray Wallace was secretary. Each of the three brothers was also a director of claimant and each owned ⅓ of its stock.

If it be assumed, arguendo, that Mrs. Wallace's testimony showed that a confidential relationship existed between Delle Wallace and Murray Wallace, "proof of a confidential relationship, without more, does not give rise to an inference of undue influence." *Polsky v. Polsky*, 467 S.W.2d 860, 863[1] (Mo.1971). To be effectual to invalidate Exhibits 1, 2 and 3, "undue influence must have been present in active exercise at the time of their execution." *McCoy v. McCoy*, 360 Mo. 199, 227 S.W.2d 698, 706 (1950). The factor of undue influence "must involve dependence in the transaction under scrutiny." *Polsky v. Polsky*, supra, 467 S.W.2d at 863[2].

■ Although the record seems to indicate that the interested parties to the instant claim are Murray Wallace, who is now the sole owner of claimant, on the one hand, and Glenn Wallace and Kent Wallace on the other hand, the fact is that in conjunction with decedent's execution of Exhibit 1 it was Glenn Wallace, not Murray Wallace, who signed the "satisfaction of claims" on behalf of claimant when it released its claim against the Fred Wallace Estate. When Exhibits 1, 2 and 3 were given to claimant, Murray was no more a beneficiary of those transactions than were Glenn and Kent, since each owned one share of the stock.

Attorney Wellman offered no evidence of any undue influence exercised by Murray Wallace upon Delle Wallace with respect to the execution of Exhibits 1, 2 and 3. Indeed he testified he was not familiar with the circumstances surrounding the execution of Exhibit 1.

The record does not support a finding of undue influence exercised by Murray Wallace with respect to Exhibits 1, 2 and 3, and the defense of undue influence constituted no basis for the order of disallowance.

The judgment is reversed and the cause remanded with directions to the trial court to enter its order allowing the claim of Wallace Cotton Company in the amount of $42,982.10, said allowance to be effective as of June 4, 1985, the date of the prior order of disallowance. § 473.403.1. It is so ordered.

PREWITT, P.J., and HOGAN and MAUS, JJ., concur.